# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |
|---|---|
| **A.A.**, a minor, by JENNY CARROLL, her Next Friend, *et al.,* | **Civil Action No.:** 2:21-CV-367-ECM |
| **Plaintiffs**, |  |
| v. |  |
| **NANCY T. BUCKNER**, Commissioner of the Alabama Department of Human Resources, in her official capacity, |  |
| **Defendant**. |  |

**Plaintiffs' Response to Order to Show Cause in Opposition to Defendant Buckner's Motion to Dismiss**

# Contents

Contents.................................................................................................. ii

Table of Authorities ............................................................................. iv

Introduction ........................................................................................... 1

Motion to Dismiss Standard.................................................................. 3

Discussion ............................................................................................. 5

I.   The Complaint States Valid *Olmstead* Claims Against
     Defendant Buckner ...................................................................... 5

     A. The unjustified segregation of children in institutions violates
        the ADA and Section 504............................................................. 6

     B. Plaintiffs are qualified persons with a disability under the
        ADA and Section 504.................................................................... 9

     C. Plaintiffs are subject to ongoing discrimination by reason of their
        disabilities because they are subject to unnecessary confinement..........12

     D. Courts generally find pleadings like Plaintiffs' sufficient to state
        claims under the ADA and Section 504 ....................................16

II.  Plaintiffs Have Standing to Pursue Their *Olmstead* Claims .........................18

     A. Plaintiffs have alleged the necessary facts to establish Article III
        standing...................................................................................18

        1.  Plaintiffs' unjustified segregation in PRTFs is an injury in fact.........19

        2.  Plaintiffs' unnecessary institutionalization is caused by and
            directly traceable to Defendant's systemic failure to provide
            sufficient community-based services and placements ......................21

        3.  Injunctive relief requiring DHR to administer resources to place
            children with mental health disabilities in the community would
            resolve Plaintiffs' claims..................................................24

     B. Defendant Buckner, in her official capacity as commissioner
        of DHR, is liable for violating federal law ...............................26

     C. The Adequacy of the Next Friends Does Not Affect the Court's
        Jurisdiction................................................................................28

       1.  Any alleged deficiencies in the adequacy of the Next Friends would not deprive the Court of jurisdiction and cannot serve as a basis for dismissal of this complaint. ...........................................29

       2.  Even if the Court considers the adequacy of the Next Friends, Plaintiffs' proposed Next Friends are more than adequate .................33

III. *Younger* Abstention Does Not Apply to this Matter .....................................44

  A. *Younger* abstention does not apply to periodic, individual case planning hearings.........................................................................................44

  B. Even if the Court applies the *Middlesex* factors, they are not met in this case ........................................................................................48

       1.  This federal class action does not interfere with individual dependency proceedings .....................................................49

       2.  Abstaining in this case would deprive Plaintiffs of a forum for their systemic ADA and Section 504 claims................................52

Conclusion .........................................................................................................56

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*31 Foster Children v. Bush*,
  329 F.3d 1255 (11th Cir. 2003) .................................................................*passim*

*Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11*,
  873 F.2d 25 (2d Cir. 1989) ..............................................................34

*Adelman v. Graves*,
  747 F.2d 986 (5th Cir. 1984) ......................................................29, 31

*Adkison v. Willis*,
  No. 3:14–cv–01394–MHH, 2015 WL 13660321 (N.D. Ala. Sept.
  30, 2015) ............................................................................26

*Alexander v. Choate*,
  469 U.S. 287 (1985).......................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................4, 5, 9, 18

*B.K. ex rel. Tinsley v. McKay*,
  156 F. Supp. 3d 1024 (D. Ariz. 2015) .............................................51

*Baby Neal ex rel. Kanter v. Casey*,
  821 F. Supp. 320 (E.D. Pa. 1993), *rev'd on other grounds*, 43 F.3d
  48 (3d. Cir. 1994)........................................................................51

*Berrios v. N.Y. City Hous. Auth.*,
  564 F. 3d 130 (2d Cir. 2009) ..........................................................32

*Bircoll v. Miami-Dade Cty.*,
  480 F.3d 1072 (11th Cir. 2007) ................................................6, 8, 12

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir.1981) (*en banc*).........................................29

*Brian A. ex rel. Brooks v. Sundquist*,
  149 F. Supp. 2d 941 (M.D. Tenn. 2000) .....................................47, 51

iv

*Charlie H. v. Whitman*,
    83 F. Supp. 2d 476 (D. N.J. 2000) ......................................................................51

*Child v. Beame*,
    412 F. Supp. 593 (S.D.N.Y. 1976) ...................................................................36

*Cobb v. D.T. Marshall*,
    481 F.Supp.2d 1248 (M.D. Ala. 2007) ......................................................26, 27

*Connor B. ex rel. Vigurs v. Patrick*,
    771 F.Supp.2d 142 (D. Mass. 2011) ............................................................51, 54

*Davis v. Walker*,
    745 F. 3d 1303 (9th Cir. 2014) .........................................................................32

*Day v. Dist. of Columbia*,
    894 F.Supp.2d 1 (D.D.C. 2012) ......................................................................23

*DeRoy v. Carnival Corp.*,
    963 F.3d 1302 (11th Cir. 2020) ..........................................................................3

*Duke Power Co. v. Env't Study Grp.*,
    438 U.S. 59 (1978) ............................................................................................21

*Dwayne B. ex rel. Stempfle v. Granholm*,
    No. 06-13548, 2007 WL 1140920 (E.D. Mich. Apr. 17, 2007) .................*passim*

*Evanston Ins. Co. v. Jimco, Inc.*,
    844 F.2d 1185 (5th Cir. 1988) ...........................................................................52

*Ex parte Young*,
    209 U.S. 123 (1908) ...........................................................................................27

*Fisher v. Okla. Health Care Auth.*,
    335 F.3d 1175 (10th Cir. 2003) .........................................................................20

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) .........................................................................21

*Friends of the Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ...................................................................................18, 25

*G.R.X. v. Foxhoven*,
No. 4:17-cv-417, 2018 WL 4701873 (S.D. Iowa May 4, 2018) .................35, 40

*Gardner ex rel. Gardner v. Parson*,
874 F.2d 131 (3d Cir. 1989) .........................................................................30, 31

*Georgia Advocacy Off. v. Georgia*,
447 F. Supp. 3d 1311 (N.D. Ga. 2020)................................................8, 16, 20, 23

*Haddad v. Arnold*,
784 F.Supp.2d 1284 (M.D. Fla. 2010)....................................................16, 17, 20

*Helen L. v. DiDario*,
46 F.3d 325 (3d Cir. 1995) .................................................................................9

*Hoffert v. Gen. Motors Corp.*,
656 F.2d 161 (5th Cir. 1981) ............................................................................29

*Hutto v. Finney*,
437 U.S. 678 (1979)..........................................................................................28

*In re Limestone Cty. Dep't of Human Res.*,
255 So. 3d 210 (Ala. Civ. App. 2017)....................................................45, 53, 54

*J.A.W. v. Evansville Vanderburgh Sch. Corp.*,
No. 3:18-CV-37-WTL-MPB, 2018 WL 2688187 (S.D. Ind. June 5,
2018) ................................................................................................................42

*J.N. v. Or. Dep't of Educ.*,
No. 6:19-cv-00096-AA, 2020 WL 5209846 (D. Or. Sept. 1, 2020) .................24

*Jeanine B. v. Thompson*,
877 F. Supp. 1268 (E.D. Wis. 1995) .................................................................35

*Joseph v. Hogan*,
561 F.Supp.2d 280. (E.D.N.Y. 2008) ..........................................................17, 23

*Juidice v. Vail*,
430 U.S. 327 (1977)..........................................................................................46

*Kenny A. ex rel. Winn v. Perdue*,
218 F.R.D. 277 (N.D. Ga. 2003) .................................................................47, 51

*Kentucky v. Graham*,
  473 U.S. 159 (1985)......................................................................22

*L.H. v. Jamieson*,
  643 F.2d 1351 (9th Cir. 1981) ......................................................51

*LaFleur v. Wallace State Comm. Coll.*,
  955 F.Supp. 1406 (M.D. Ala. 1996) ..............................................28

*Lahey v. Contra Costa Cty. Dep't of Children and Family Servs.*,
  No. C01–1075 MJJ, 2004 WL 2055716 (N.D. Cal. Sept. 2, 2004) ..................54

*LaShawn A. ex rel. Moore v. Kelly*,
  990 F.2d 1319 (D.C. Cir. 1993)................................................51, 54

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................19, 21

*M.B. ex rel. Eggemeyer v. Corsi*,
  No. 2:17-cv-04102-NKL, 2018 WL 327767 (W.D. Mo. Jan. 8,
  2018) ............................................................................................47

*M.D. v. Perry*,
  799 F. Supp. 2d 712 (S.D. Tex. 2011)..................................47, 50, 51

*M.R. v. Dreyfus*,
  697 F.3d 706 (9th Cir. 2011) .........................................................20

*Marisol A. ex rel. Forbes v. Giuliani*,
  929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir.
  1997) ............................................................................................51

*Marisol A. v. Giuliani*,
  No. 95 Civ. 10533, 1998 WL 265123 (S.D.N.Y. May 22, 1998) ......................35

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982)....................................................47, 48, 51, 52

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)......................................................................28

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) .........................................................4

*Mulhall v. UNITE HERE Local 335*,
   618 F.3d 1279 (11th Cir. 2010) ............................................................................4

*Nat'l Assoc. of the Deaf v. Florida*,
   980 F.3d 763 (11th Cir. 2020) ....................................................................26, 27

*New Orleans Pub. Serv. v. Council of City of New Orleans*,
   491 U.S. 350 (1989)........................................................................................46

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)........................................................................................52

*Olivia Y. v. Barbour*,
   No. 3:04-CV-251LN, slip op. (S.D. Miss. Mar. 11, 2005) ..............................36

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999)...................................................................................*passim*

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) ..........................................................................20

*Pennzoil v. Texaco*,
   481 U.S. 1 (1987)............................................................................................46

*People United for Children, Inc. v. City of New York*,
   108 F.Supp.2d 275 (S.D.N.Y. 2000) ...............................................................54

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ......................................................................19

*Reprod. Health Servs. v. Strange*,
   No. 17-13561, 2021 WL 2678574 (11th. Cir. 2021).........................................24

*Rudolph v. Lowndes Co. Bd. Of Educ.*,
   242 F. Supp. 2d 1107 (M.D. Ala. 2003)...........................................................29

*Sam M. ex rel. Elliott v. Carcieri*,
   608 F.3d 77 (1st Cir. 2010)........................................................................*passim*

*Sanchez-Velasco v. Sec'y Dept. of Corr.*,
   287 F.3d 1015 (11th Cir. 2002) ......................................................................40

*Silberman v. Miami Dade Transit*,
    927 F.3d 1123 (11th Cir. 2019) ............................................................6

*Speaker v. U.S. Dept. of Health and Human Servs. Cts. For Disease
    Control & Prevention*,
    623 F.3d 1371 (11th Cir. 2010) ............................................................4

*Sprint Commc'ns v. Jacobs*,
    571 U.S. 69 (2013)................................................................*passim*

*St. George v. Pinellas Cty.*,
    285 F.3d 1334 (11th Cir. 2002) ............................................................4

*Stalley ex rel. U.S. v. Orlando Regional Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) ............................................................4

*T.B. v. T.H.*,
    30 So. 3d 429 (Ala. Civ. App. 2009) ..................................................53

*T.W. & M.W. by Enk v. Brophy*,
    124 F. 3d 893 (7th Cir. 1997) ......................................................32, 41

*Tinsley v. Flanagan*,
    No. CV-15-00185, 2016 WL 8200450 (D. Ariz. May 13, 2016)......................35

*Tokyo Gwinnett v. Gwinnett Cty.*,
    940 F.3d 1254 (11th Cir. 2019) ........................................44, 47, 48

*United States v. Georgia*,
    461 F. Supp. 3d 1315 (N.D. Ga. 2020)......................................17, 20

*Verizon Maryland Inc. v. Pub. Servs. Comm'n of Maryland*,
    535 U.S. 635 (2002)..........................................................................27

*Watts v. Florida Intern. Univ.*,
    495 F.3d 1289 (11th Cir. 2007) ............................................................5

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)..................................................................39, 40

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ..........................................................21

*Younger v. Harris*,
   401 U.S. 37 (1971)......................................................................*passim*

**Statutes**

29 U.S.C. § 705(20)(B) ...............................................................9

42 U.S.C. § 2000d-7 ..................................................................27

Ala. Admin. Code r. 560-X-41 ....................................................10

Ala. Code § 12-15-304 ...............................................................42

Ala. Code §§ 12-15-306 ..............................................................45

Ala. Code § 12-15-314 ...............................................................53

Ala. Code § 12-15-315................................................................45, 53

Ala. Code § 12-15-321................................................................45

Ala. Code § 26-1-1 .....................................................................29

Americans with Disabilities Act, 42 U.S.C. § 12101 ...............................1, 7

Americans with Disabilities Act, 42 U.S.C. § 12102 ...............................9

Americans with Disabilities Act, 42 U.S.C. § 12112 ...............................22

Americans with Disabilities Act, 42 U.S.C. § 12131 ...............................10

Americans with Disabilities Act, 42 U.S.C. § 12132 ...............................6

Americans with Disabilities Act, 42 U.S.C. § 12202 ...............................27

Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794........................*passim*

**Other Authorities**

28 C.F.R. § 35.130 ......................................................6, 7, 16, 22

28 C.F.R. § 41.51 ........................................................................6

29 C.F.R. § 1630.2 ......................................................................9

Fed. R. Civ. P. 12(b)(1)....................................................................................3, 4, 28

Fed. R. Civ. P. 12(b)(6)........................................................................................4

Fed. R. Civ. P. 17(c)(1)...........................................................................29, 32, 43

Fed. R. Civ. P. 17(c)(2)...........................................................................29, 30, 33

U.S. CONST. amend. XI............................................................................26, 27, 28

## INTRODUCTION

Plaintiffs are children with mental health disabilities in the care and custody of the Department of Human Resources (**DHR**). DHR—under the control of Defendant Buckner, in her official capacity—has failed to procure and maintain the community-based services and placements that would allow Plaintiffs and other children in foster care to reside in the community. As a result, each Plaintiff is unnecessarily placed or is at serious risk of being unnecessarily placed in highly restrictive institutions called psychiatric residential treatment facilities (**PRTFs**).

Defendant's conduct violates the Americans with Disabilities Act (**ADA**), 42 U.S.C. §§ 12101 *et seq.*, and Section 504 of the Rehabilitation Act (**Section 504**), 29 U.S.C. §§ 794 *et seq.*, which require DHR to provide treatment in the most integrated setting appropriate to a child's needs. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999). In this class action, Plaintiffs seek declaratory and injunctive relief to remedy these violations on behalf of themselves and other similarly situated children in DHR's custody.

Here, Defendant Buckner moves to dismiss, arguing that Plaintiffs fail to state a claim, that they lack standing, and that the Court should abstain. Defendant's motion should be denied.

Plaintiffs, like every child placed in a PRTF, have mental health impairments that require specialized treatment and services. For Plaintiffs and

1

many like them, however, these treatments can be provided in community-based placements, like therapeutic foster homes and other community placements, with appropriate support and services. Doc. 1 (*Compl.*) ¶¶ 95-96. But DHR has failed to procure and maintain appropriate placements and services like therapeutic foster homes and short-term emergency mental health services that would enable these children to be integrated into the community. Doc. 1 (*Compl.*) ¶¶ 20-22, 132-164.

DHR's failures injure Plaintiffs by causing their unnecessary segregation in PRTFs— depriving them of important relationships and healthy childhood developmental opportunities. Doc. 1 (*Compl.*) ¶¶ 17, 33-34, 55-57, 72-74, 82-84. That unnecessary segregation is itself unlawful discrimination and is a legal injury for the purpose of Article III standing.

Plaintiffs' injuries are also directly traceable to Defendant Buckner, in her official capacity as commissioner of DHR. Defendant Buckner is responsible for ensuring the availability of appropriate community-based placements and services for children that need them. Doc. 1 (*Compl.*) ¶¶ 90-93. And in this action, Plaintiffs seek an injunction requiring Defendant to meet her obligations by procuring necessary placements and services so that they are available to class members that need them.

This injunction does not implicate *Younger v. Harris* abstention. 401 U.S. 37 (1971). First, *Younger* abstention is inapplicable to state-court cases like Plaintiffs'

2

individual juvenile court proceedings that concern judicial review of state executive activity.

Second, the injunction itself in no way interferes with Plaintiffs' individual juvenile court cases. The injunction would require DHR to procure and maintain sufficient capacity of community-based placements and services to meet the needs of Alabama's children in foster care with mental impairments; to implement and sustain an effective transition system so that youth in foster care with mental impairments can be timely transitioned to integrated settings in the community; and to provide Plaintiffs with access to these services so they can successfully transition Plaintiffs to integrated settings in the community. Doc. 1 (*Compl.*) pp. 32-33. This relief is systemic, not the sort of relief available in individual dependency proceedings. And this relief would require only that Defendant develop resources so that they are available to children who need them; it would not require the Court to provide those services to any particular child.

## MOTION TO DISMISS STANDARD

When a defendant moves to dismiss a complaint on its face for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court is required to "consider only the allegations in the complaint, accepting them as true for this purpose." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1309 (11th Cir. 2020) (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251

3

(11th Cir. 2007)).[1] Taking the allegations in Plaintiffs' complaint as true, the Court must merely "look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction[.]" *Stalley ex rel. U.S. v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008) (quotations and citations omitted). General factual allegations are sufficient at the pleading stage to meet this burden. *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Similarly, in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dept. of Health and Human Servs. Cts. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). A district court's analysis of a motion to dismiss must be limited to the four corners of the complaint. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

At this stage, the complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible." *Ashcroft v. Iqbal*, 556

---

[1] Defendant Buckner mentions in passing that, under Rule 12(b)(1), different legal standards are applicable to a facial challenge and a factual challenge to a complaint. Doc. 20 (*Def.'s Br.*) at 13. Because Defendant Buckner does not support her motion with affidavits, testimony, or other extrinsic factual material, her motion must be considered a facial challenge to the Complaint. *Cf. Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (finding the defendant's "motion to dismiss was a factual attack because it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings").

U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This rule "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Watts v. Florida Intern. Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

## DISCUSSION

### I.   The Complaint States Valid *Olmstead* Claims Against Defendant Buckner

Plaintiffs have sufficiently alleged facts which entitle them to relief under Title II of the ADA and Section 504. Defendant's pattern and practice of planning, administering, operating, and funding its foster care system results in the confinement and segregation of hundreds of children with mental impairments, including Plaintiffs, in highly restrictive, institutional placements.

Defendant consistently misstates the applicable legal standard for analyzing these claims, introduces pages of unsubstantiated claims not in Plaintiffs' Complaint, and confuses even the most fundamental requirements of the ADA and Section 504. Defendant's assertion that Plaintiffs have failed to state a claim under the ADA and Section 504 fails.

5

## A. The unjustified segregation of children in institutions violates the ADA and Section 504

Both the ADA and Section 504 prohibit discrimination on the basis of disability in the provision of public services. 42 U.S.C. § 12132; 29 U.S.C. § 794(a); *see also* 28 C.F.R. § 41.51; 28 C.F.R. §35.130(a). Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 forbids disability discrimination in programs or activities receiving federal financial assistance. 29 U.S.C. § 794.[2] Given the textual similarities between the two statutes, the same standards govern disability discrimination claims under both statutes. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

In general, to state a claim for relief under the ADA or Section 504, a plaintiff must allege that (1) they are a qualified person with a disability, (2) they were excluded from participation in or denied the benefits of a program offered by a public entity or subjected to discrimination by a public entity, and (3) the discrimination was by reason of the disability. *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing 42 U.S.C. § 12132).

---

[2] DHR is a recipient of federal financial assistance. Doc. 1 (*Compl.*) ¶ 214.

Defendant fails to acknowledge that the unnecessary segregation and isolation of persons with disabilities is prohibited discrimination by reason of a disability. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999); *see also* 42 U.S.C. §§ 12101(a)(2), (5). Public entities must "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). To comply with this "integration mandate," public entities must reasonably modify their policies, practices, and procedures when necessary to avoid discrimination, 28 C.F.R. § 35.130(b)(7), which is precisely the remedy Plaintiffs seek.

In *Olmstead*, the Supreme Court, interpreting the integration mandate, found that public entities are required to provide community-based services to persons with disabilities when (1) treatment professionals have determined that such services are appropriate, (2) the person does not oppose community-based treatment, and (3) such treatment can be reasonably accommodated, taking into account the resources available to the state and the needs of others with mental disabilities. *Olmstead*, 527 U.S. at 607. The Court held that the unjustified institutional segregation of persons with disabilities—persons who would be eligible for community-based services under the Court's three-pronged test— constitutes discrimination by a public entity by reason of disability. *Id.* at 600.

7

Allegations of unjustified institutionalization under *Olmstead* thus satisfy the second and third elements of *Bircoll*, which require that a plaintiff allege they have been denied the benefits of a program or discriminated against and that the denial or discrimination was by reason of the plaintiff's disability. *See Bircoll*, 480 F.3d at 1083. *Bircoll* and *Olmstead* taken together require that a plaintiff bringing a claim under *Olmstead* allege they are (1) a qualified person with a disability; and (2) that they are unjustifiably institutionalized or at serious risk of being unjustifiably institutionalized as a result of a public entity's administration of its programs or services. To show that they are unjustifiably institutionalized, a plaintiff must allege that (a) community-based treatment is appropriate, (b) they would not be opposed to such placement, and (c) such treatment could be reasonably accommodated. *Olmstead*, 527 U.S. at 607; *Georgia Advocacy Off. v. Georgia*, 447 F. Supp. 3d 1311, 1321-22 (N.D. Ga. 2020). Contrary to Defendant's suggestion, "discriminatory animus" or facial discrimination are not required under *Olmstead* because a public entity's unjustified institutionalization is *per se* discrimination on the basis of disability.[3] Doc. 20 (*Def.'s Br.*) at 86; *Olmstead*, 527 U.S. at 597.

---

[3] Additionally, as a general matter, discriminatory animus is not a required element of an ADA or Section 504 claim, and Defendant cites no authority to the contrary. *See Alexander v. Choate*, 469 U.S. 287, 296-97 (1985) ("[M]uch of the conduct that Congress sought to alter in passing [Section 504] would be difficult if not impossible to reach were [Section 504] construed to proscribe only conduct

Here, Plaintiffs' allegations, on their face, raise valid claims under the ADA and Section 504 and are supported by sufficient factual detail to render them plausible. *See Ashcroft*, 556 U.S. at 678. As a result, Defendant's argument that Plaintiffs have failed to state a claim is untenable.

## B. Plaintiffs are qualified persons with a disability under the ADA and Section 504

Plaintiffs have alleged sufficient facts to support that they are "qualified individuals with disabilities" according to the ADA and Section 504. An individual with a disability is a person (1) with "a physical or mental impairment that substantially limits one or more major life activities," (2) with a "record of such impairment," or (3) who is "regarded as having such an impairment." 42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B). An individual meets the requirement of "'being regarded as having [a mental] impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived [mental] impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(3)(A) (emphasis added); 29 C.F.R. § 1630.2(g). The ADA and Section 504 define a "qualified"

---

fueled by a discriminatory intent."); *Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995) (holding that Congress did not intend "to limit the Act's protections and prohibitions to circumstances involving deliberate discrimination. . . . . [W]e will not eviscerate the ADA by conditioning its protections upon a finding of intentional or overt 'discrimination.'").

individual with a disability as "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Every Plaintiff sufficiently alleges that they are a "qualified individual" by alleging that they are a child in foster care, and therefore meet the essential eligibility requirements of the services and programs provided by Defendant—a fact which Defendant does not contest. Doc. 1 (*Compl.*) ¶ 14. Every Plaintiff also alleges that they have a mental impairment that substantially limits one or more major life activities. Doc. 1 (*Compl.*) ¶¶ 14, 27, 49, 61, 77, 95.

Plaintiffs' Complaint is also replete with allegations showing that Defendant classifies, treats, and regards the Plaintiffs as having mental impairments that substantially limit major life activities. Defendant has been confining Plaintiffs to PRTFs for years. Doc. 1 (*Compl.*) ¶¶ 14, 15, 28, 50, 65, 78, 80. And it is only children with diagnosed mental impairments who are confined to PRTFs.  Doc. 1 (*Compl.*) ¶¶ 8, 14, 95; *see also* Ala. Admin. Code r. 560-X-41-.13(2), -.09 (2)(a-d) (requiring that any child admitted into a PRTF exhibit inappropriate performance of activities of daily living, impaired safety, impaired thought process, or need for inpatient treatment).

Defendant argues that Plaintiffs undercut these allegations of disability by also alleging that they are eligible for community-based services. Doc. 20 (*Def.'s Br.*) at 83-85. Without referring to any particular paragraph in Plaintiffs' Complaint, Defendant asserts that "Plaintiffs have affirmatively pleaded that some or all [of the Plaintiffs] no longer have an impairment, only a record of one, which has improved." Doc. 20 (*Def.'s Br.*) at 84. Defendant then erroneously declares that Plaintiffs allege they have "overcome whatever physical or mental impairment" that necessitated their placement in a PRTF and cites to six paragraphs in Plaintiffs' Complaint, all of which contain allegations that Plaintiffs have been referred for or are otherwise eligible for community-based placements. Doc. 20 (*Def.'s Br.*) at 85; *see* Doc. 1 (*Compl.*) ¶¶ 45, 51, 66-68, 78. Defendant concludes that "[a]ny plaintiff whose impairment has improved does not have a disability upon which ADHR could discriminate." Doc. 20 (*Def.'s Br.*) at 84.

Not only does Defendant's argument mischaracterize Plaintiffs' allegations—which include no reference to having "overcome" their mental impairments—it also reflects a fundamental failure to understand the crux of Plaintiffs' claims and the central requirements of the ADA, Section 504, and *Olmstead*. Defendant appears to believe that a child can only be eligible for community-based services if the child **does not** have a disability. Defendant's argument assumes that if Plaintiffs are requesting community-based placements,

11

they must also be alleging that they are no longer disabled. That archaic and discriminatory assumption—that a child's disability renders them unworthy of life in an integrated community—is precisely the type of discrimination the ADA was meant to redress. *See Olmstead*, 527 U.S. at 600 ("[I]nstitutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life."). According to the ADA and Section 504, teenagers who "suffer[] from mental impairment," Doc. 20 (*Def.'s Br.*) at 54, are worthy of participating in community life, and, if their needs can be met in community settings, they are entitled to be integrated into them.

## C. Plaintiffs are subject to ongoing discrimination by reason of their disabilities because they are subject to unnecessary confinement

As explained in section I(A) above, to state a claim under *Olmstead*, once Plaintiffs have alleged that they are qualified persons with disabilities, they need only allege that DHR's administration of its programs or services has resulted in their unjustified institutionalization or placed them at serious risk of such institutionalization. 527 U.S. at 600. Here, Plaintiffs have sufficiently alleged that they have been unjustifiably institutionalized or are at serious risk of institutionalization due to Defendant's administration of the foster care system. In doing so, Plaintiffs have sufficiently alleged ongoing discrimination by reason of disability and satisfied the second and third elements under *Bircoll*.

12

More specifically, Plaintiffs allege that Defendant has a policy and practice of planning, administering, operating, and funding a child and family support program in a way that relies on segregated PRTFs to unnecessarily confine children with mental impairments, and denies them the opportunity to receive appropriate services in an integrated community setting. Doc. 1 (*Compl.*) ¶¶ 1, 2, 8, 11, 12, 17, 20-22, 94-96, 111, 132, 150, 162, 164-65, 187. Defendant prioritizes the funding of institutional placements over residential care and fails to adequately procure, support, and maintain family homes in integrated community settings. Doc. 1 (*Compl.*) ¶¶ 12, 132, 138, 148, 162, 164. Defendant fails to procure, maintain, and ensure access to a sufficient array of community-based mental health services. Doc. 1 (*Compl.*) ¶¶ 150, 156-57, 160. Defendant fails to develop and maintain adequate transition planning practices and discharge procedures, resulting in the unnecessary continued institutionalization of children with disabilities. Doc. 1 (*Compl.*) ¶¶ 22, 98, 165, 166, 170, 181.

Plaintiffs also allege that Defendant's administration of the foster care program has resulted in their unjustifiable confinement in PRTFs, which are highly restrictive, segregated, institutional placements. Doc. 1 (*Compl.*) ¶¶ 4, 14, 15, 17, 28, 34, 50, 55-57, 65, 74, 78, 80, 83, 84, 99-103, 111. Plaintiffs show that their institutionalization is unjustified by alleging that they are eligible for community-

based placements with appropriate supports and services. Doc. 1 (*Compl.*) ¶¶ 29, 51, 62, 78.

More specifically, A.A. alleges that the PRTF in which she resides has determined that she could be served in a more integrated setting but she remains confined there, and that she wants to live with a family in the community. B.B. alleges that she could be served in the community with appropriate supports and services and that she wants to live in a foster home. Doc. 1 (*Compl.*) ¶¶ 51, 58. C.C. alleges that he was recommended by a PRTF for a more integrated placement in May of 2020, but in September 2020, he still had not been discharged, and that he wishes to reestablish his relationship with his brother and uncle, who wish to foster him. Doc. 1 (*Compl.*) ¶¶ 66-68, 70-71, 72. D.D. alleges that he is eligible for community placement, has completed treatment at one PRTF, and that he likes attending his community school and playing video games, which he cannot do in his current placement. Doc. 1 (*Compl.*) ¶¶ 78, 84. Finally, Plaintiffs allege that more integrated placements could be reasonably accommodated by DHR. Doc. 1 (*Compl.*) ¶¶ 143-44, 153.

Defendant does not suggest that Plaintiffs fail to allege sufficient facts to show that they are unjustifiably institutionalized. Instead, Defendant fails to recognize that this Court need not consider, under *Olmstead*, whether Plaintiffs have alleged that Defendant's denial of community-based placements is a result of

14

a "discriminatory animus towards their disabilities." *See* Doc. 20 (*Def.'s Br.*) at 86. Defendant incorrectly argues that Plaintiffs must specifically allege *how* their disability is prompting County DHR offices to refuse community-based placements. Doc. 20 (*Def.'s Br.*) at 84. This is simply not the standard under the ADA and Section 504's integration mandate.

Defendant further errs in suggesting that Plaintiffs must plead their particular disabilities in order to raise a plausible claim that they are entitled to relief. Defendant's assertion that "there are mental impairments that prevent a child from caring for themselves, that may make them a danger to themselves, and/or that make them a danger to others" implies that having a particular mental impairment could categorically preclude Plaintiffs from relief. *See* Doc. 20 (*Def.'s Br.*) at 86-87. Nothing could be further from the truth and again reveals Defendant's deep-seated misunderstanding of the abilities of people with disabilities.[4]

Every child with a disability is entitled to community integration so long as (1) a community-based placement would be appropriate, (2) the placement is not opposed by the child, and (3) the placement could be reasonably accommodated. *Olmstead*, 527 U.S. at 600. Defendant's assumption that children with particular

_____

[4] Defendant's characterization of children with mental impairments as "brutally violent" similarly has no basis in evidence and is rooted in misguided and offensive stereotypes of children with disabilities. *See* Doc. 20 (*Def.'s Br.*) at 66.

disabilities or diagnoses, could not, as a matter of law, be entitled to placement in a community setting exemplifies the exact type of discrimination that the ADA and Section 504 plainly prohibit.

Plaintiffs' allegations are more than sufficient to show that they have been subject to discrimination on the basis of their disability—in this case, unnecessary institutionalization—in violation of the ADA and Section 504. *See Olmstead*, 527 U.S. at 598; *see also Haddad v. Arnold*, 784 F.Supp.2d 1284, 1298 (M.D. Fla. 2010); *Georgia Advocacy Off.*, 447 F. Supp. 3d at 1321-22; 28 C.F.R. § 35.130(b)(3) (prohibiting public entities from utilizing criteria or methods of administration that have the effect of subjecting individuals with disabilities to discrimination).[5]

### D.  Courts generally find pleadings like Plaintiffs' sufficient to state claims under the ADA and Section 504

Courts find similarly alleged facts and claims to be sufficient under the ADA and Section 504 to withstand a motion to dismiss. *See Georgia Advocacy Off. v.*

---

[5] *See also* U.S. Dep't of Justice, Statement of the Dept. of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C., p. 3, Question 2 (last updated February 25, 2020), *available at* https://www.ada.gov/olmstead/q&a_olmstead.htm (finding that a "public entity may be liable for violation of the integration mandate where it (1) directly or indirectly operates facilities or programs that segregate individuals with disabilities, (2) finances the segregation of individuals with disabilities in private facilities, or (3). . .promotes or relies upon the segregation of individuals with disabilities in private facilities or programs.").

*Georgia*, 447 F.Supp.3d 1311 (N.D. Ga. 2020) (finding plaintiffs stated proper *Olmstead* claim where they alleged that state of Georgia failed to administer State's "GNETS" program in most integrated setting appropriate to needs of students with disabilities, and that students could be educated in more integrated setting, students did not oppose such setting, and that their education in more integrated setting could be reasonably accommodated); *United States v. Georgia,* 461 F. Supp. 3d 1315 (N.D. Ga. 2020) (finding Plaintiff's allegations that public school children with disabilities who were in program that provided separate educational environments for students with certain emotional and behavioral disorders, and could be served in more integrated settings, were sufficient to allege that program violated ADA's integration mandate); *Haddad*, 784 F.Supp.2d at 1284, 1298 (finding that plaintiff properly alleged discrimination by a public entity by reason of her disability where she alleged that she was institutionalized despite being eligible to receive community-based services); *Joseph v. Hogan*, 561 F.Supp.2d 280, 292. (E.D.N.Y. 2008) (finding that where plaintiffs alleged that individuals with mental illnesses were unnecessarily segregated in highly restrictive institutions, even though their needs could be met in more integrated setting, and that these individuals desired to reside in more integrated community setting, such allegations were adequate to state violations of the ADA and Section 504 under *Olmstead* and *Twombly's* plausibility standard).

17

Plaintiffs' allegations support a claim for which relief can be granted because they allege that (1) they are qualified individuals with disabilities, and (2) they have been unjustifiably institutionalized as a result of Defendant's administration of Alabama's foster care system. These allegations raise cognizable claims under the ADA and Section 504. Plaintiffs support these claims with specific allegations that support a reasonable inference that Defendant violated the ADA and Section 504 and is liable. *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.").

## II.   Plaintiffs Have Standing to Pursue Their *Olmstead* Claims

### A.  Plaintiffs have alleged the necessary facts to establish Article III standing

To have standing to sue under Article III, "a plaintiff must show (1) they have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). To establish standing at the pleading stage, Plaintiffs need only assert general factual

18

allegations that Defendant has injured them. *Lujan*, 504 U.S. at 561. On a motion to dismiss, the court will presume that general allegations embrace those specific facts that are necessary to support the claim. *Id*.

Here, Plaintiffs have provided sufficient facts to establish standing because they have suffered unjustifiable segregation and institutionalization as a result of Defendant's ongoing failure to comply with the ADA and Section 504, and Plaintiffs' requested relief will redress their injury by providing them with opportunities to be placed and receive services in an integrated community setting.[6]

### 1. *Plaintiffs' unjustified segregation in PRTFs is an injury in fact*

An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Children with disabilities have an interest in receiving services or participating in programs or activities in the most integrated setting appropriate to their needs, and in avoiding discrimination by way of unjustified institutional segregation. *See Olmstead*, 527 U.S. at 600.

Plaintiffs' allegations that they are unnecessarily institutionalized in highly restrictive PRTFs or are at serious risk of such unnecessary institutionalization,

---

[6] Because Plaintiffs have not yet filed their motion for class certification, this Court is limited to reviewing Plaintiffs' individual standing, not their standing to represent the putative class. *See Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000).

despite their eligibility for community-based services, is sufficient to establish an injury-in-fact. *See Olmstead*, 527 U.S. at 597-98; *United States v. Georgia*, 461 F.Supp.3d 1315, 1324 (N.D. Ga. 2020) (finding that plaintiffs' allegations that they received educational services in a segregated environment but could have been served in more integrated educational settings were sufficient to allege injury.); *see also Haddad v. Arnold*, 784 F.Supp.2d 1284, 1294 (M.D. Fla. 2010) (finding plaintiff established injury in fact where she alleged she was at imminent risk of unjustifiable institutionalization).[7]

Plaintiffs allege that they have been unjustifiably segregated in PRTFs and are at risk of future unnecessary institutionalization. Defendant characterizes PRTFs as the only placements in which a child can receive supports and services addressing their underlying traumas and mental health needs and dismisses

---

[7] *See also Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013) ("[T]he ADA and the *Olmstead* decision extend to persons at serious risk of institutionalization or segregation and are not limited to individuals currently in institutional or other segregated settings."); *M.R. v. Dreyfus*, 697 F.3d 706, 733 (9th Cir. 2011) (finding that plaintiffs stated *Olmstead* claim where the state's proposed reduction in community services would "exacerbate Plaintiffs' already severe mental and physical difficulties" and "put Plaintiffs at serious risk of institutionalization"); *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003) (ADA "would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation"); *Georgia Advocacy Off. v. Georgia*, 447 F.Supp.3d 1311, 1323 (N.D. Ga. 2020) ("As numerous courts have found, potential plaintiffs need not wait until the segregation occurs or is about to occur.").

20

Plaintiffs' hopes of experiencing childhood in a family-like setting. Such

aspirations, Defendant writes, are nothing "more than the dreams of a teenager,

especially in light of her own assertions that she suffers from mental impairment."

Doc. 20 (*Def.'s Br.*) at 54. Defendant's unsupported and stigmatizing argument

that children with mental health impairments cannot live, play, and attend school in

their communities, and must instead be institutionalized to receive treatment,

ignores decades of disability law and the fact that unnecessary segregation is an

unlawful injury per se. *See Olmstead*, 527 U.S. at 600.

### 2. *Plaintiffs' unnecessary institutionalization is caused by and directly traceable to Defendant's systemic failure to provide sufficient community-based services and placements*

"To satisfy Article III's causation requirement, the named plaintiffs must

allege that their injuries are 'connect[ed] with the conduct of which they

complain.'" *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019)

(quotations and citations omitted). In other words, a plaintiff's injury must be

"fairly traceable to the challenged action of the defendant, and not the result of the

independent action of some third party not before the Court." *Lujan*, 504 U.S. at

560. This requires "no more than a showing that there is a substantial likelihood"

of causation. *Duke Power Co. v. Env't Study Grp.*, 438 U.S. 59, 75 n.20 (1978).

"[E]ven harms that flow indirectly from the action in question can be said to be

'fairly traceable' to that action for standing purposes." *Focus on the Fam. v.*

*Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). Here, Plaintiffs establish a clear causal connection between their unjustified segregation and institutionalization and Defendant's ongoing and systemic failure to comply with the requirements of the ADA and Section 504.

DHR is a public entity charged with administering the child welfare system in Alabama. Doc. 1 (*Compl.*) ¶ 89. DHR is legally obligated to administer its services, programs, and activities to children with mental impairments in the most integrated setting appropriate to their needs, 28 C.F.R. § 35.130(d), and is prohibited from using "criteria or methods of administration" that have the effect of unjustifiably institutionalizing and segregating children in PRTFs, 42 U.S.C. § 12112(b)(3). As Commissioner of DHR, Defendant controls DHR's child welfare policies and practices and is responsible for ensuring DHR's compliance with these obligations. Doc. 1 (*Compl.*) ¶ 91.[8]

Further, Defendant, in her official capacity as Commissioner of DHR, systemically fails to procure, support, and maintain an adequate number of community-based placements and an adequate array of community-based services,

---

[8] Defendant Buckner acknowledges that she has been sued in her official capacity as DHR's chief executive and administrative officer and stands in the place of the agency for purposes of this litigation. "Official-capacity suits 'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978).

and fails to develop and maintain adequate transition planning practices or PRTF discharge procedures. Doc. 1 (*Compl.*) ¶¶ 12, 132, 138, 148, 150, 156-57, 160 162, 164. Plaintiffs allege that these specific failures, which she has a duty to correct, have resulted in an injury to them—namely, their unjustifiable institutional confinement and segregation. Doc. 1 (*Compl.*) ¶¶ 97, 98, 187.

Although Defendant attempts to deflect and implicate local teams or individual decision-makers as the sole parties responsible for individual placement and service decisions, this suit concerns DHR's system-wide failures to develop the services and placement resources necessary to meet Plaintiffs' needs in integrated community settings. It does not concern individual placement decisions.

Nor do Plaintiffs need to allege that Defendant was the sole cause of their placement in PRTFs. Rather, it is sufficient to allege, as Plaintiffs do, that Defendant administers the program in which Plaintiffs participate, and that Defendant's methods of administering the system have led to their institutional confinement. *See, e.g.*, *Day v. Dist. of Columbia*, 894 F.Supp.2d 1, 22 (D.D.C. 2012); *Georgia Advocacy Off. v. Georgia*, 447 F.Supp.3d 1311, 1321 (N.D. Ga. 2020) ("[T]he state need not have made the direct decisions that led to the discrimination [of children in segregated placements], as using criteria that leads to discrimination sufficiently forms a causal connection"); *Joseph S. v. Hogan*, 561 F.Supp.2d 280, 293 (E.D.N.Y. 2008) (rejecting State's argument, on motion to

dismiss, that plaintiffs had to show that state was specifically responsible for their placement in nursing facilities). After all, "[a] defendant need not be the 'sole source' of harm, nor must a plaintiff 'eliminate any other contributing causes to establish its standing.'" *J.N. v. Or. Dep't of Educ.,* No. 6:19-cv-00096-AA, 2020 WL 5209846, at *9 (D. Or. Sept. 1, 2020) (quoting *Barnum Timber Co. v. E.P.A.*, 633 F.3d 894, 901 (9th Cir. 2011)).

Defendant's attempts to abdicate any responsibility for Plaintiffs' injuries also conflicts with DHR's *own* annual reporting to the federal government where it admitted that it over-relied on institutional placements because it lacks sufficient community-based alternatives, noting that it needed to recruit and retain well-trained foster/adoptive resource families so that the state's "dependence on congregate care facilities" would decrease. Doc. 1 (*Compl.*) ¶ 133. It is precisely because Defendant does not deploy resources and deliver a sufficient array of community-based placements and services that the county offices, ISP teams, medical providers, psychologists, and juvenile judges lack sufficient community-based alternatives for children in need of services and supports at the local level.

### 3. *Injunctive relief requiring DHR to administer resources to place children with mental health disabilities in the community would resolve Plaintiffs' claims*

The remaining standing prong "focuses … on whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Reprod. Health*

*Servs. v. Strange*, No. 17-13561, 2021 WL 2678574, at *6 (11th. Cir. 2021) (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 287 (2008)). "[F]or a plaintiff who is injured or threatened with injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Friends of the Earth, Inc.*, 528 U.S. at 185-186. This lawsuit seeks declaratory and injunctive relief against Defendant in her official capacity to stop the ongoing discrimination and prevent future discrimination against Plaintiffs.

As explained above, Plaintiffs do not seek indirect redress from a third party or to displace the juvenile courts, *guardian ad litem* (**GALs**), or foster families. And the Complaint offers no factual allegations to support Defendant's contention otherwise. *See* Doc. 20 (*Def.'s Br.*) at 64-67. Rather, Plaintiffs seek to expand the availability of community-based placements and supports so that Plaintiffs and fellow class members can live in integrated, community settings, and not be unjustifiably institutionalized. This redress must be directed at Defendant because she has the authority, power, and control to remedy Plaintiffs' injuries. Doc. 1 (*Compl.*) ¶¶ 89-93.

Taking Plaintiffs' allegations as true, as the Court must, Plaintiffs have provided sufficient factual allegations to establish standing.

### B. Defendant Buckner, in her official capacity as commissioner of DHR, is liable for violating federal law

Well-established black-letter law holds that Defendant Buckner, in her official capacity, can be sued for the injunctive relief that Plaintiffs seek. Defendant's arguments otherwise—that sovereign immunity bars this action—demonstrate a basic misunderstanding of Eleventh Amendment jurisprudence. The Eleventh Amendment does not bar suits against state officials in their official capacities when plaintiffs seek "prospective equitable relief to end continuing violations of federal law." *Cobb v. D.T. Marshall*, 481 F.Supp.2d 1248, 1258 (M.D. Ala. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This action seeks injunctive and declaratory relief against Defendant Buckner in her official capacity for ongoing violations of two federal statutes. It is thus not barred by the Eleventh Amendment. *E.g.*, *Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 774 (11th Cir. 2020) (holding that a suit for declaratory and prospective injunctive relief against state officials in their official capacities for violations of the ADA "falls squarely under the doctrine set forth in *Ex parte Young*"); *Adkison v. Willis*, No. 3:14–cv–01394–MHH, 2015 WL 13660321, at *4 (N.D. Ala. Sept. 30, 2015) (finding that the Eleventh Amendment did not bar suit for Section 504 claims against a state official sued in his official capacity).

Defendant Buckner does not dispute that she has been sued in her official capacity or that Plaintiffs seek prospective injunctive relief for violations of federal

law. *See* Doc. 20 (*Def.'s Br.*) at 36-37. Instead, she argues that the Eleventh
Amendment bars this suit because Plaintiffs have allegedly failed to state valid
claims under the ADA and Section 504. Doc. 20 (*Def.'s Br.*) at 70.[9] However, the
determination of whether the Eleventh Amendment bars a claim "does not include
an analysis of the merits of the claim." *Verizon Maryland Inc. v. Pub. Servs.
Comm'n of Maryland*, 535 U.S. 635, 636-37 (2002). To determine whether the *Ex
Parte Young* doctrine applies, "a court need only conduct a 'straightforward
inquiry' into whether the complaint alleges an ongoing violation of federal law and
seeks relief properly characterized as prospective." *Id.* Here, Plaintiffs have alleged
an ongoing violation of the ADA and Section 504 and seek prospective relief. The
analysis ends there, and the Eleventh Amendment does not bar this suit.[10]

Defendant Buckner also erroneously argues that Plaintiffs' request for
attorney's fees and costs is prohibited by the Eleventh Amendment. Doc. 20

---

[9] As explained above in section I above, Defendant's arguments regarding
the adequacy of Plaintiffs' claims are altogether unfounded.

[10] Defendant Buckner also asserts that because this suit is against her in her
official capacity it is a suit against the State of Alabama itself. Doc. 20 (*Def.'s Br.*)
at 68. This is incorrect. "[O]fficial-capacity actions for prospective relief are not
treated as actions against the State." *Cobb. v. D.T. Marshall*, 481 F.Supp.2d 1248,
1258 (M.D. Ala. 2007) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S.
58, 71 n.10 (1989)). Even if this were a suit against the State (which it is not), Title
II of the ADA and Section 504 abrogate the immunity provided to the state under
the Eleventh Amendment. *See* 42 U.S.C. § 12202 (ADA); 42 U.S.C. § 2000d-7
(Section 504); *see also Nat'l Assoc. of the Deaf*, 980 F.3d at 770, 774-75 (holding
that Congress abrogated sovereign immunity in Title II of the ADA and Section
504).

(*Def.'s Br.*) at 70. The Supreme Court has made clear that the Eleventh Amendment does not bar an award of attorney's fees and costs ancillary to a grant of prospective relief. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989) (attorney's fees); *Hutto v. Finney*, 437 U.S. 678, 695 (1979) (costs); *LaFleur v. Wallace State Comm. Coll.*, 955 F.Supp. 1406, 1423 (M.D. Ala. 1996) ("[A]lthough monetary in nature, the Eleventh Amendment does not prevent the plaintiff from seeking attorneys' fees and costs . . . ."). Thus, Defendant's claim that Plaintiffs' request for costs and attorney's fees converts this action into a suit for damages is also without merit.

### C.  The Adequacy of the Next Friends Does Not Affect the Court's Jurisdiction

Defendant claims that the Plaintiffs' Next Friends lack standing to bring this lawsuit. The adequacy of the Next Friends, however, does not affect Plaintiffs' standing to sue under Article III and is thus not an appropriate subject for a facial motion to dismiss under Rule 12(b)(1). The appropriate vehicle for addressing the adequacy of the Next Friends, rather, is Plaintiffs' formal Motion to Appoint Next Friends, which is being filed simultaneously with this response. *See* Doc. 30. That motion is supported by sworn declarations from the Next Friends and conclusively demonstrates that each Next Friend has met and discussed this case with the Plaintiffs the Next Friend represents, that each Next Friend is dedicated to their

best interest, and that each Next Friend is more than capable of prosecuting this
action on their behalf.

> ### 1. *Any alleged deficiencies in the adequacy of the Next Friends would not deprive the Court of jurisdiction and cannot serve as a basis for dismissal of this complaint.*

The Plaintiffs are minors under Alabama law, and therefore lack capacity to
bring a lawsuit on their own. Ala. Code § 26-1-1 (1975) (age of majority is
nineteen). Federal Rule of Civil Procedure 17 provides that a minor may bring a
lawsuit in federal court through a representative, such as a general guardian, a
committee, a conservator, or a "like fiduciary." Fed. R. Civ. P.17(c)(1).  Where, as
here, a minor's general representative has interests which may conflict with those
of the person it is supposed to represent,[11] Rule 17(c)(2) provides that the minor
may sue "by a next friend or by a guardian ad litem."[12] *See Hoffert v. Gen. Motors
Corp.*, 656 F.2d 161, 164 (5th Cir. 1981);[13] *c.f. Rudolph v. Lowndes Co. Bd. Of
Educ.*, 242 F. Supp. 2d 1107, 1118-19 (M.D. Ala. 2003) (allowing Next Friend
where no conflict between Next Friend and Named Plaintiff). Given that DHR

---

[11] The Named Plaintiffs are in the custody of DHR, which would typically
be their "general guardian." Doc. 1 (*Compl.*) ¶¶ 31, 32, 52, 54, 64, 79.

[12] Technically, a minor sues by a "next friend" and is defended by a
"guardian ad litem," but the duties and powers of both representatives have been
construed as identical. *Adelman v. Graves*, 747 F.2d 986, 988 n.4 (5th Cir. 1984).

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en
banc*), the Eleventh Circuit adopted as binding precedent all decisions of the
former Fifth Circuit handed down prior to October 1, 1981.

cannot represent Plaintiffs in this action because of an obvious conflict—Plaintiffs have brought suit challenging DHR's actions and Defendant is its Commissioner—Plaintiffs are entitled to an alternate representative. *See* Fed. R. Civ. P. 17 (c)(2) ("The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.").

In this case, Plaintiffs seek the appointment of three Next Friends to represent them in this action by motion supported by declarations. Whether the Court ultimately grants Plaintiffs' motion for the formal appointment of the Next Friends will not affect the Court's subject matter jurisdiction to hear this case. A proposed next friend's "capacity to sue" as the next friend of a child does not implicate Article III standing. *Gardner ex rel. Gardner v. Parson*, 874 F.2d 131, 137 n.9 (3d Cir. 1989); *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 83 n.5 (1st Cir. 2010) (citing *Morgan v. Potter*, 157 U.S. 195, 198 (1895)). This is because courts recognize that the real party in interest is the children and, so long as they meet the requirements for Article III standing, constitutional standing is satisfied. *See Sam M.*, 608 F.3d at 83 n.5.

Indeed, should the Court find a Next Friend to be improper, the appropriate remedy is not to dismiss for want of jurisdiction but to protect the children's interests by appointing an appropriate Next Friend. Defendant cites no cases in

30

support of her argument for dismissal, because no such cases exist. Doc. 20 (*Def.'s Br.*) at 51. To the contrary, every federal appellate court that has considered this issue has held that such a dismissal is reversible error.

In *Gardner v. Parson*, 874 F.2d 131 (3d Cir. 1989), the Third Circuit reversed a district court that had dismissed a case on the basis that the proposed Next Friend was inadequate. In reversing and remanding in part, the court held that the trial court should have appointed a Next Friend or at least held a hearing to determine whether one should have been appointed:

> The purpose of Rule 17(c) is to further the child's interest in prosecuting or defending a lawsuit, or at least to allow an evaluation of the merits of the suit relative to the child's best interests. The court should have appointed a next friend or at the least held a hearing to determine whether a next friend should be appointed. Rule 17(c) was not intended to be a vehicle for dismissing claims on a summary judgment motion. This result cannot be what the drafters of Rule 17(c) had in mind when they provided that a court which declines to appoint a representative "shall make such other order as it deems proper for the protection of the infant or incompetent person."

*Id.* at 140.

Likewise, in *Adelman v. Graves*, 747 F.2d 986 (5th Cir. 1984), the Fifth Circuit reversed a dismissal of a complaint based on an allegedly inappropriate guardian. The court held that "access to the courts by aggrieved persons should not be unduly limited, particularly, as in the instant case, where an incompetent person raises allegations of violation of his rights attributable to his custodians." *Id.* at

31

989. In remanding the case, the Fifth Circuit noted that "the district court's primary concern in the instant case must be to assure, under Rule 17(c), that [Plaintiff's] interests in vindicating his statutory and constitutional rights are properly protected." *Id.*; *see also Davis v. Walker*, 745 F. 3d 1303, 1310 (9th Cir. 2014) ("Although the district court has discretion to craft an appropriate remedy to protect the incompetent person, the court may not use the Rule as a vehicle for dismissing claims or for allowing the interests of an incompetent litigant to go completely unprotected."); *Berrios v. N.Y. City Hous. Auth.*, 564 F. 3d 130, 134 (2d Cir. 2009) (where a minor is seeking redress in Federal Court, "the court is not to reach the merits without appointing a suitable representative").

Even in *T.W. ex rel. Enk v. Brophy*, the case principally relied on by Defendant, the Seventh Circuit noted that, had there not been other grounds necessitating dismissal of the case, the appropriate result would have been to allow further efforts to determine whether the proposed Next Friend was adequate. 124 F.3d 893, 898 (7th Cir. 1997).

The adequacy of Plaintiffs' proposed Next Friends should not be addressed on this motion to dismiss. That issue should instead be considered in the context of Plaintiffs' motion for appointment of the Next Friends, which is being filed concurrently with this response.

### 2. *Even if the Court considers the adequacy of the Next Friends, Plaintiffs' proposed Next Friends are more than adequate*

#### i. *The proposed Next Friends meet the requirements for the appointment of Next Friends*

Rule 17(c)(2) does not set forth any specific qualifications for Next Friends. Several courts, however, have considered the appointment of Next Friends in cases where, as here, the Named Plaintiffs were children challenging deficiencies in a child welfare system. In *Sam M. v. Carcieri*, the First Circuit articulated the following requirements in a class action alleging inadequacies in Rhode Island's foster care system: first, the real party in interest must be inaccessible or unable to prosecute the action on his own; and, second, there must be "a showing that the Next Friend is 'truly dedicated to the best interests of the person the Next Friend seeks to represent.'" 608 F.3d 77, 90 (1st Cir. 2010) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 163-64 (1990)). In assessing whether a proposed Next Friend is "truly dedicated to the best interests" of the child, the First Circuit held that:

> [C]ourts may consider the individual's familiarity with the litigation, the reasons that move her to pursue the litigation, and her ability to pursue the case on the child's behalf. Evidence that the proposed Next Friend has met the child he seeks to represent certainly enhances the individual's suitability as a Next Friend. . . But access to federal courts need not be denied to a minor Plaintiff if the court finds that the proposed Next Friend has a good faith belief that she can adequately represent the child in federal court.

33

*Id.* at 92.[14]

The First Circuit undertook its Next Friend analysis "with guidance from other courts that have tailored the Next Friend analysis to the realities of foster care children and to the general principle that litigants should be afforded access to federal courts in pursuit of their constitutional and statutory rights." *Id.* at 89. The court also noted "the realities of foster care children and . . . that due to maltreatment, multiple placements, and social and psychological issues, foster care children are often unable to forge significant relationships with the adults that are entrusted to protect the children's interests." *Id.* "The fact that plaintiffs filed suit against their legal guardian for alleged violations of the state's obligations as their guardian and custodian further inform[ed the] analysis." *Id.* The court concluded that "because these foster care children lack significant ties with their parents and have been placed under the state's legal custody and guardianship, a significant relationship need not be required as a prerequisite to Next Friend status." *Id.* at 91.[15]

_____

[14] *See also Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11*, 873 F.2d 25, 30–31 (2d Cir. 1989) (in assessing adequacy of Next Friend for child in state custody, court "should consider the good faith of those claiming to speak for the infant" and whether "the 'next friend' is motivated by a sincere desire to seek justice on the infant's behalf").

[15] Lack of significant and close relationships with adults is particularly unsurprising where, as here, the plaintiff children are not even living in foster homes but, rather, have been placed by the State in multiple institutions over the course of their time in the State's custody. *See, e.g.*, Doc. 1 (*Compl.*) at ¶ 32 (A.A

In addition to *Sam M.*, numerous courts in child welfare cases have similarly approved Next Friends who do not personally know the children or do not have a significant relationship with them, but who are truly dedicated to their best interests. *E.g.*, *G.R.X. v. Foxhoven*, No. 4:17-cv-417, 2018 WL 4701873 (S.D. Iowa May 4, 2018) (permitting public defender with no significant relationship to child to serve as next friend, given absence of other adults in child's life); *Tinsley v. Flanagan*, No. CV-15-00185, 2016 WL 8200450, at *5 (D. Ariz. May 13, 2016) (Next Friends with no pre-existing relationship were permitted where children had no significant relationships with adults; denial of appointment would preclude the children from obtaining relief); *Dwayne B. ex rel. Stempfle v. Granholm*, No. 06-13548, 2007 WL 1140920, at *3 (E.D. Mich. Apr. 17, 2007) ("Because the named Plaintiffs, like other foster children, have been removed from home and have had their preexisting ties to family and friends effectively severed, they have few, if any, significant relationships with adults who are suitable and willing to act as 'next friends.'").[16]

_____

moved between three facilities in five years); *Id.* at ¶ 55 (B.B, placed in facilities for three of the five years she's been in DHR's custody); *Id.* at ¶ 63 (C.C. is fourteen years-old and has spent the last five years in facilities); *Id.* at ¶ 81 (D.D. is sixteen years-old and has spent one-third of his life in facilities).

[16] *See also Marisol A. v. Giuliani*, No. 95 Civ. 10533, 1998 WL 265123, at *8-9 (S.D.N.Y. May 22, 1998) (finding Next Friends, most of whom were professionals involved with child welfare, appropriate notwithstanding that many "had not met or had had very limited contact with the plaintiffs they represent"); *Jeanine B. v. Thompson*, 877 F. Supp. 1268, 1287–88 (E.D. Wis. 1995) (finding

Plaintiffs' proposed Next Friends meet the requirements set forth by the courts in foster care cases for the appointment of Next Friends. As will be further demonstrated in the Motion to Appoint Next Friends and accompanying declarations, the Next Friends are familiar with the litigation, appear for the sole purpose of vindicating the Plaintiffs' fundamental rights to be placed in non-segregated environments and to be free from harm, and are fully capable of pursuing the case on the children's behalves. The Next Friends have no individual motivations—financial, ideological, or otherwise—in undertaking this task. Prior to the filing of this suit, all of the Next Friends met with the children on whose behalf they now appear, informed themselves regarding the facts and circumstances of the children's lives and current placements, and determined that they can genuinely represent the best interests of those children in this action. Moreover, if they are appointed as Next Friends they intend to continue communicating with the children.

---

community members with demonstrated interest in children's issues adequate Next Friends for children in foster care); *Child v. Beame*, 412 F. Supp. 593, 599 (S.D.N.Y. 1976) (permitting Next Friend, who did not know plaintiff children before agreeing to serve as their Next Friend, to litigate on their behalf because he had"manifested an interest in their welfare"); *Olivia Y. v. Barbour*, No. 3:04-CV-251LN, slip op., at 10 (S.D. Miss. Mar. 11, 2005) (Ex. A) (finding next friends to plaintiff foster children adequate because each was "generally knowledgeable about the nature and purpose of this litigation, and has a good faith interest in the named plaintiffs' welfare and in the prosecution of this litigation").

36

**Next Friend Jenny Carroll (for Plaintiffs A.A. and B.B.)**

Named Plaintiffs A.A. and B.B. are represented by Next Friend Jenny

Carroll. Ms. Carroll is a law professor at the University of Alabama School of

Law, where she specializes in criminal law, juvenile justice, and counter-terrorism.

Doc. 1 (*Compl.*) ¶ 47. She previously served as a juvenile public defender and

represented indigent defendants in mental health matters in adult and juvenile

court. *Id*. As set forth in her Declaration submitted with the Motion to Appoint

Next Friends, Professor Carroll met with both children through video-conferencing

and also spoke with them by telephone prior to the filing of this litigation. Doc.

30-1 (Decl. of Prof. Jenny Carroll) ¶ 3.[17] Professor Carroll is familiar with the facts

of A.A. and B.B.'s cases, as well as the harms and risks of harm both girls have

suffered while in DHR's custody. Doc. 1 (*Compl.*) ¶ 48. She is dedicated to serving

their best interests in this litigation. *Id.* Professor Carroll has no individual

motivation, financial or otherwise, to serve as Next Friend. Her only motivation is

to ensure that A.A.'s and B.B.'s statutory rights are protected. Doc. 30-1 ¶ 5. If she

is appointed their Next Friend, she intends to remain in regular contact with them.

*Id*. ¶ 6.

---

[17] Although Plaintiffs recognize that the Next Friends' declarations are not
formally before the Court on Defendant's motion to dismiss, Plaintiffs nonetheless
cite them where relevant for ease of reference.

37

### Next Friend Christine Freeman (for Plaintiff D.D.)

Named Plaintiff D.D. is represented by Next Friend Christine Freeman. Ms. Freeman is an attorney and currently serves as the Executive Director of the Middle District of Alabama Federal Defender Program and the Alabama Post-Conviction Relief Project. Doc. 1 (*Compl.*) ¶ 86. She served continuously as a foster parent from 1996 until at least 2017. From 2017 until about two years ago, she served as a foster parent providing respite care (very short-term foster care). Doc. 30-1 (Decl. of Christine Freeman) ¶ 2. As a foster parent, she has had significant experience with DHR and is familiar with many of its policies and procedures. *Id*. ¶ 3. She has attended foster parent meetings and board meetings and annual meetings of the state foster parents' organization. *Id*. On April 9, 2021, prior to the filing of this litigation, Ms. Freeman met in-person with D.D. *Id.* ¶ 4. She has also spoken with D.D.'s GAL. *Id*. Ms. Freeman is familiar with the facts of D.D.'s case, as well as the harms and risks of harm D.D. has suffered in DHR custody. Doc. 1 (*Compl.*) ¶ 87. She is dedicated to serving D.D.'s best interests in this litigation. *Id.* Ms. Freeman has no individual motivation, financial or otherwise, to serve as Next Friend. Her only motivation is to ensure that D.D.'s statutory rights are protected. Doc. 30-1 ¶ 6. If she is appointed D.D.'s Next Friend, she intends to remain in regular contact with him. *Id.* ¶ 7.

**Next Friend C.G. (for Plaintiff C.C.)**

Named Plaintiff C.C. is represented by Next Friend C.G., who is his paternal

uncle. Mr. C.G. is very close with C.C. Although he lives in Texas, he travels to

Alabama several times a year to visit with his nephew and they speak on the phone

at least once a week. Doc. 30-1 (Decl. of C.G.) ¶ 3. Mr. C.G. also keeps in regular

contact with C.C.'s therapist at Pathway, the facility at which his nephew is placed.

*Id*. Mr. C.G. is familiar with the facts of C.C.'s case, as well as the harm and risks

of harm C.C. has suffered in DHR's custody. Doc. 1 (*Compl.*) ¶ 76. He is dedicated

to serving C.C.'s best interests in this litigation.[18] *Id*. Mr. C.G. has no individual

motivation, financial or otherwise, to serve as Next Friend. His only motivation is

to ensure that C.C.'s statutory rights are protected. Doc. 30-1 ¶ 4.

> ii.  *The cases relied on by Defendant are inapposite.*

The State argues that the Next Friends proposed here are inadequate, relying

on two cases that are inapposite. First, Defendant mistakenly relies on *Whitmore v.*

*Arkansas,* 495 U.S. 149 (1990), to argue that the Next Friends must have a

"significant relationship with the real party." Doc. 20 (*Def.'s Br.*) at 40. *Whitmore*

was a death penalty appeal in which the Supreme Court set forth the requirement

---

[18] Defendant makes assertions, without any support, as to alleged actions taken by the state court in relation to the custody of C.C. and the proposed next friend, C.C.'s uncle. Doc. 20 (*Def.'s Br.*) at 46-47. These unsupported allegations are inappropriate and unsubstantiated by any evidence. As such, they should be ignored.

that "a 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Whitmore*, 495 U.S. at 163. The Court noted in *dicta* that "it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* at 163-64. The Court ultimately found that the individual on whose behalf the Next Friend sought to act was competent to proceed on his own behalf, rendering the appointment of the Next Friend unnecessary. *Id*. at 165-66.

The Eleventh Circuit has since recognized that a "significant relationship" is not a separate requirement for granting Next Friend status. *Sanchez-Velasco v. Sec'y Dept. of Corr*., 287 F.3d 1015, 1026 (11th Cir. 2002) ("As to that latter part [in *Whitmore*], about 'some significant relationship', we have previously indicated that it may not be an additional, independent requirement but instead may be one means by which the would-be next friend can show true dedication to the best interests of the person on whose behalf he seeks to litigate."). *See also Sam M. v. Carcieri*, 608 F. 3d at 90 ("While the Supreme Court recognized that some courts have 'suggested' that a Next Friend must also have a significant relationship with the party in interest, the Court did not hold a significant relationship as a necessary prerequisite for next friend status."); *G.R.X. ex rel. H.R.W. v. Foxhoven*, No. 4:17-cv-417-SMR-HCA, 2018 WL 4701873, at *2 (S.D. Iowa May 4, 2018) ("The Supreme Court noted [in *Whitmore*] that other courts have required 'that a next

40

friend . . . have some significant relationship with the real party in interest,' but the Supreme Court did not require it.").

The State also misplaces reliance on *T.W. & M.W. by Enk v. Brophy*, 124 F. 3d 893 (7th Cir. 1997), which denied Next Friend status in a child custody case due to the lack of a significant relationship between the proposed Next Friend (Enk) and the two children he sought to represent. *Brophy* was not a case challenging systemic deficiencies in foster care, but, rather, a child custody case brought on behalf of two children and seeking millions of dollars in monetary damages. And although the Seventh Circuit appeared to adopt the "significant relationship" requirement for appointments of Next Friends, it also clarified that:

> If a close relative is unavailable and the child has no conflict-free general representative the court may appoint a personal friend of the plaintiff or his family, a professional who has worked with the child, or, in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation.

*Id*. at 897.

Even under *Brophy*, the Next Friends proposed here are appropriate, given the lack of other available adults in the Plaintiff children's lives who could serve as Next Friends. Moreover, the "discussion regarding whether Enk, who had brought the suit on behalf of the children, was an appropriate representative [ ] was *dicta*, because the case was dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, thereby mooting the issue of whether the case had

41

been brought by an appropriate next friend." *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, No. 3:18-CV-37-WTL-MPB, 2018 WL 2688187, at *1 (S.D. Ind. June 5, 2018).

### iii. The Plaintiffs' Guardians Ad Litem Cannot Serve as Next Friends.

Defendant mistakenly suggests that the Plaintiffs' juvenile court-appointed GALs should serve as the Plaintiffs' Next Friends. However, Alabama law circumscribes the duties of juvenile court-appointed GALs to "dependency and termination of parental rights proceedings." Ala. Code § 12-15-304. There is no state law granting such GALs the authority to represent children in any other federal or state court proceeding.

Defendant cites one case for the proposition that a GAL can take on "a variety of matters in light of their statutory obligation to advocate for appropriate services for the child." Doc. 20 (*Def.'s Br.*) at 50 (citing *In re N.D.M.,* 837 So. 2d 316 (Ala. Civ. App. 2002)). In that case, the child's juvenile court-appointed GAL made a motion *in that same juvenile court* that the child be placed in a mental hospital for treatment—a motion wholly within the attorney's scope of authority as the child's GAL in the juvenile case to which the attorney was appointed. *Id*. The case does not hold (or even discuss) that a GAL appointed exclusively for a juvenile or family court proceeding has the authority, obligation, or duty to bring a case in federal court for violations of federal law. *See id.*

42

In *Sam M.*, the defendants likewise objected to the plaintiffs' proffered Next Friends, arguing that the plaintiffs were adequately represented by their family court-appointed GALs. The district court agreed and dismissed the complaint. *Sam M.,* 608 F.3d at 83. The First Circuit reversed, finding that Rhode Island law, like Alabama law here, conferred no authority on family court-appointed GALs to represent children in any tribunal other than that of a family court proceeding. *Id.* at 86; *see also id.* at 87 ("Since it does not appear that Rhode Island law confers general authority on guardians ad litem or CASA attorneys to represent the children outside family court proceedings, we find that the children's guardians ad litem cannot be considered the children's general guardians, like fiduciaries or duly appointed Rule 17(c) representatives. Thus, the district court erred in finding that the state-appointed guardians ad litem or CASA advocates precluded Plaintiffs from filing suit by a Next Friend.").

The proposed Next Friends meet the requirements of Rule 17(c) and should be permitted to serve as Next Friends here. To bar the Named Plaintiffs from vindicating their federal statutory and constitutional rights simply because they are neglected or abused children who have not had the opportunity to develop sufficiently close relationships with adults who are available to represent them without conflict in federal court would be to penalize them for being the victims of

a dysfunctional child welfare system that has harmed them, and would deny them the opportunity to seek redress for those very harms.

## III. *Younger* Abstention Does Not Apply to this Matter

### A. *Younger* abstention does not apply to periodic, individual case planning hearings

In general, federal courts "have a virtually unflagging obligation to exercise their jurisdiction." *Tokyo Gwinnett v. Gwinnett Cty.*, 940 F.3d 1254, 1267 (11th Cir. 2019) (citing *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988)). Abstention is not appropriate merely because a state-court proceeding involves the same or a similar subject matter. *Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 72 (2013). "Parallel state-court proceedings do not detract" from the federal court's obligation to decide cases within the scope of federal jurisdiction. *Id.* at 77.

*Younger* abstention is a narrow "exception" to this general rule. *Tokyo Gwinnett*, 940 F.3d at 1266-67 (collecting cases). As the Supreme Court has explained in *Sprint Commc'ns v. Jacobs*, *Younger* abstention is potentially available in only three very specific "exceptional circumstances": (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." 571 U.S. at 78 (alteration in original, citations omitted); *accord. Tokyo Gwinnett*, 940 F.3d at 1267. None of these circumstances are present here.

44

Plaintiffs and other children in the proposed class are children who have already been adjudicated dependent and placed in DHR's custody. Doc. 1 (*Compl.*) ¶¶ 31, 53, 64, 76, 79, 188. As Defendant acknowledges, these children remain in ongoing dependency proceedings in the juvenile courts. Doc. 20 (*Def.'s Br.*) at 74-75. These proceedings primarily consist of permanency hearings.[19] *See* Ala. Code §§ 12-15-315, -321. The purpose of these hearings is to ensure that appropriate work is being done to achieve a permanent home for the child. Ala. Code §§ 12-15-315(a), -321. At the permanency hearing, DHR provides its permanency plan to the juvenile court along with information regarding DHR's efforts to implement the plan. Ala. Code §§ 12-15-315, -321. If the child's parental rights have not been terminated, the juvenile court may modify the plan before deciding to affirm it. Ala. Code § 12-15-315. After the child's parental rights are terminated, the permanency plan is left to DHR's discretion. Ala. Code § 12-15-321; *In re Limestone Cty. Dep't of Human Res.*, 255 So. 3d 210, 217 (Ala. Civ. App. 2017) (holding juvenile court "exceeded its statutory authority" by "overrid[ing] DHR's permanency plan" for children with terminated parental rights). Permanency hearings occur at least annually. Ala. Code §§ 12-15-315, -321. And a hearing need not be convened every time DHR makes a placement decision.

---

[19] The juvenile court also has jurisdiction over removal hearings, termination of parental rights hearings, and other dependency disposition proceedings not relevant here. *See* Ala. Code §§ 12-15-306, -314, - 319.

These juvenile court proceedings are not the kind of state-court processes that implicate *Younger* abstention. Dependency proceedings are civil. They are not criminal. Nor are they civil enforcement proceedings "akin to a criminal prosecution" against Plaintiffs. *Sprint Commc'ns*, 571 U.S. at 79. Dependency proceedings, for example, manifestly do not charge Plaintiffs with "wrongful act[s]." *Id.* They are also not proceedings concerning orders like contempt or bond requirements, which uniquely concern the juvenile court's ability to perform its judicial functions. *Id.* at 78 (referring to *Juidice v. Vail*, 430 U.S. 327, 336 (1977) (civil contempt proceeding) and *Pennzoil v. Texaco*, 481 U.S. 1, 13 (1987) (bond requirements)).

To the contrary, the juvenile court's review of DHR's permanency planning activity is precisely the kind of review of executive action that the Supreme Court has made clear does not trigger *Younger*. As the Court has explained, "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).

Following this reasoning, district courts that have considered whether class actions, like this one, concern the availability of placements and services to foster

46

children have generally found *Younger* abstention inapplicable. *E.g.*, *M.B. ex rel. Eggemeyer v. Corsi*, No. 2:17-cv-04102-NKL, 2018 WL 327767, at *6 (W.D. Mo. Jan. 8, 2018) (holding *Younger* inapplicable because it is "the executive's actions that are being questioned, not the power of the juvenile court"); *M.D. v. Perry*, 799 F. Supp. 2d 712, 719 (S.D. Tex. 2011) ("The relief sought is directed against executive branch officials . . . , not the judiciary.").[20]

Defendant Buckner does not argue that dependency proceedings fall within one of the *Sprint* categories. Her brief neither articulates nor cites the standard set out by the Supreme Court in *Sprint Communications* or by the Eleventh Circuit in *Tokyo Gwinnett*. Instead, she skips that analysis and addresses only the so-called *Middlesex* factors, first articulated in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), that courts use to evaluate state court proceedings that fall into one of the *Sprint* categories. Doc. 20 (*Def.'s Br.*) at 72-73; *see 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). But that is not the law. As the Eleventh Circuit and the Supreme Court have both held, the

---

[20] *See also Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 286 (N.D. Ga. 2003) (holding *Younger* inapplicable because "plaintiffs seek relief directed solely at *executive* branch defendants to remedy their alleged failures as plaintiffs' custodians") (emphasis in original); *Dwayne B. ex rel. Stempfle v. Granholm*, No. 06-13548 , 2007 WL 1140920, at *5-7 (E.D. Mich. Apr. 17, 2007) (holding *Younger* inapplicable because "Plaintiffs seek injunctive relief against the Department of Children's Services, not the courts."); *Brian A. ex rel. Brooks v. Sundquist*, 149 F. Supp. 2d 941, 957 (M.D. Tenn. 2000).

*Middlesex* factors are only relevant if the judicial proceedings at issue are criminal, quasi-criminal, or concern orders, like contempt, specifically related to a court's ability to perform its judicial functions. *Tokyo Gwinnett*, 940 F.3d at 1267-68; *Sprint Commc'ns v. Jacobs*, 571 U.S. 69, at 73 (2013).[21] Because the juvenile court's ongoing review of DHR's planning in dependency cases fits in none of those categories, *Younger* abstention is inapplicable here.

### B.  Even if the Court applies the *Middlesex* factors, they are not met in this case

Even if the Court finds that periodic state juvenile court review of DHR's actions fits into one of the three "exceptional circumstances" articulated in *Sprint*, abstention under *Younger* is still inappropriate unless (1) the federal relief plaintiffs seek would "interfere" with ongoing state proceedings, *31 Foster Children*, 329 F.3d at 1275; (2) the proceedings at issue "implicate important state interests"; and (3) "the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Tokyo Gwinnett*, 940

---

[21] Defendant Buckner relies on *31 Foster Children v. Bush* for her analysis. That case, however, was decided before the Supreme Court's decision in *Sprint*. In *31 Foster Children*, the Eleventh Circuit thus did not consider whether the state judicial proceedings fell into one of the *Sprint* categories. Regardless, in *Sprint*, the Supreme Court rejected the central premise of *31 Foster Children* that abstention is appropriate whenever the *Middlesex* factors are met. *Sprint Commc'ns*, 571 U.S. at 81-82. And the Eleventh Circuit has since recognized that the *Middlesex* factors are only relevant if the state proceeding at issue falls into one of the *Sprint* categories. *Tokyo Gwinnett*, 940 F.3d at 1267-68.

F.3d at 1268. Here, these conditions are not met because this lawsuit neither interferes with dependency proceedings nor do those proceedings provide Plaintiffs with an adequate opportunity to seek the systemic reforms at issue in this case.[22]

### 1. *This federal class action does not interfere with individual dependency proceedings*

Plaintiffs allege that DHR, under the control of Defendant Buckner, is responsible for ensuring that adequate community-based placements and services are available for foster children with mental health disabilities, including services to support a child's transition from a PRTF to a community-based placement. Doc. 1 (*Compl.*) ¶ 93. Plaintiffs also allege that—on a systemic basis—DHR fails to satisfy this duty. *E.g.*, *Id.* ¶¶ 132-42, 145, 150-59, 173-78, 181-87.

As a result of this systemic lack of services and failure to properly develop and implement transition policies and practices, Plaintiffs, along with similarly situated foster children with mental health disabilities whose needs could be met in community placements, are unnecessarily placed in and remain at PRTFs.

To remedy these systemic failures, Plaintiffs seek injunctive relief that would require DHR to develop the community-based placements and services to

---

[22] Admittedly, juvenile court proceedings implicate important state interests concerning the care of children in state custody. That said, the federal government's interest in the enforcement of its statutes and preventing discrimination against foster youth with mental impairments is at least as vital as the state's interest in its dependency proceedings.

meet the needs of Class members; to develop practices and policies to identify and support the transition of class members to integrated settings in the community including Plaintiffs, when it is appropriate to do so; and to provide Plaintiffs with access to these services so they may be ultimately transferred to community-based placements. Doc. 1 (*Compl.*) pp.32-33. Or, as Defendant Buckner accurately puts it, "[t]he true summation of the Plaintiffs [sic] request is they would like for the State DHR to change its policy." Doc. 20 (*Def.'s Br.*) at 60.

The injunctive relief Plaintiffs seek thus does not "interfere" with the juvenile court's review of dependency cases. *31 Foster Children*, 329 F.3d at 1276 ("If there is no interference, then abstention is not required."). The injunctive relief would in no way require the juvenile court to take or not take any action with respect to a particular child. Nor would it require the federal court to oversee decisions made by the juvenile court. Instead, the injunction Plaintiffs seek would require DHR to expand the availability of community-based settings and adopt policies and practices to ensure eligible children have access to those settings.

The relief Plaintiffs seek will thus actually increase the juvenile court's discretion, not constrain it. By "seeking systemic changes that would improve the foster care system" for all class members, the injunctive relief will "ultimately aid the ongoing state proceedings, not interfere with them." *M.D. ex rel. Stukenberg v. Perry*, 799 F. Supp. 2d 712, 720 (S.D. Tex. 2011).

For this reason, most cases that have considered relief that would expand the availability of placements and services to foster children have held that such relief does not interfere with ongoing juvenile court proceedings.[23] Notably, in almost every child welfare action where *Younger* abstention was rejected by the district

---

[23] *E.g.*, *LaShawn A. ex rel. Moore v. Kelly*, 990 F.2d 1319,1322-24 (D.C. Cir. 1993) (rejecting application of *Younger* abstention); *L.H. v. Jamieson*, 643 F.2d 1351, 1354 (9th Cir. 1981) (finding *Younger* abstention unwarranted where abused and neglected minor plaintiffs were not seeking to enjoin plaintiffs' juvenile court proceedings or prohibit state officials from enforcing any state law); *M.D. ex rel. Stukenberg v. Perry*, 799 F. Supp. 712, 720 (S.D. Tex. 2011); *B.K. ex rel. Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1037 (D. Ariz. 2015) ("The request by Plaintiffs for 'practices to ensure a minimally adequate capacity and array of placements' . . . does not interfere with the juvenile courts' authority or ability to order initial child placements or to review the adequacy of placements."); *Connor B. ex rel. Vigurs v. Patrick*, 771 F.Supp.2d 142, 154 (D. Mass. 2011) (rejecting *Younger* abstention because "this case does not involve the type of state proceeding that would require abstention and because the *Middlesex* factors have not been satisfied."); *Dwayne B. ex rel. Stempfle v. Granholm*, No. 06-13548, 2007 WL 1140920, at *5-7 (E.D. Mich. Apr. 17, 2007) (rejecting *Younger* abstention in challenge to administration of Michigan's child welfare system where relief "will not require ongoing federal court interference with the daily operation of [the state's] juvenile courts."); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 286 (N.D. Ga. 2003) (finding *Younger* abstention improper because relief sought was directed solely at executive branch officials and would not necessarily interfere with juvenile court review hearings); *Brian A. ex rel. Brooks v. Sundquist*, 149 F. Supp. 2d 941, 957 (refusing to abstain under *Younger* where "nothing about this litigation seeks to interfere with or enjoin" ongoing state proceedings); *Charlie H. v. Whitman,* 83 F. Supp. 2d 476, 514 (D. N.J. 2000) (refusing to apply *Younger* to class challenge to New Jersey's child welfare system); *Marisol A. ex rel. Forbes v. Giuliani*, 929 F. Supp. 662, 688-689 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997) (finding *Younger* abstention inapplicable); *Baby Neal ex rel. Kanter v. Casey*, 821 F. Supp. 320, 332–333 (E.D. Pa. 1993), *rev'd on other grounds*, 43 F.3d 48 (3d. Cir. 1994) (same).

51

court there was the same sort of periodic review of permanency planning that occurs for children in DHR custody.

The relief sought in this case is thus materially different from the relief in *31 Foster Children v. Bush* and *O'Shea v. Littleton*—the cases relied on by Defendant. Unlike here, the relief sought in both of those cases would have required the district court to exercise ongoing control over state judicial proceedings. In *31 Foster Children*, the plaintiffs requested that the district court issue orders with respect to the disposition of individual children and "appoint a panel . . . to implement a systemwide plan to revamp and reform dependency proceedings in Florida." 329 F.3d at 1279. And in *O'Shea*, the relief sought by the plaintiffs would have entailed federal court oversight of individual state criminal cases. 414 U.S. 488, at 500-01 (1974). No such relief is requested here.

As explained above, Plaintiffs seek the creation of an adequate array of placements, services and transition policies and practices. Plaintiffs do not seek an injunction mandating how those placements be used for individual children.

### 2. *Abstaining in this case would deprive Plaintiffs of a forum for their systemic ADA and Section 504 claims*

The third *Middlesex* factor, whether plaintiffs are afforded an adequate opportunity to vindicate their federal rights in the state forum, "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1193 (5th Cir. 1988). For the dependency proceedings

at issue to qualify, more than the ability to raise claims is required; the available remedies must be "adequate" in light of the relief Plaintiffs seek. *Sprint Commc'ns*, 571 U.S. at 77 (quoting *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). Here they are not.

As noted above, Plaintiffs seek systemic relief that would require Defendant to change DHR's policies and practices regarding the development of an adequate placement and service array and transition policies and practices. Relief of this nature is unavailable in Alabama's juvenile courts.

Alabama's juvenile courts "are purely creatures of statute and have extremely limited jurisdiction." *T.B. v. T.H.*, 30 So. 3d 429, 431 (Ala. Civ. App. 2009). They are empowered to address only the specific dependency case in front of them. *E.g.*, Ala. Code § 12-15-314(a) (permitting the juvenile court to make certain dispositional orders for the welfare of "a [dependent] child"); § 12-15-315(a) (permitting the juvenile court to determine the permanency plan for a dependent child). They do not have the authority to direct DHR to change its policies or practices or the power to require DHR to improve its placement and service array. *See, e.g.*, *In re Limestone Cty. Dep't of Human Res.*, 255 So. 3d 210, 219 (Ala. Civ. App. 2017) (holding the juvenile court lacks the power to "dictate the manner in which the Commissioner performs her statutory duties"). And for many class members like B.B.—whose parental rights have been terminated, Doc.

1 (*Compl.*) ¶ 54—the juvenile court does not have the jurisdiction even to hear claims related to her placement. *Id*. at 217 (holding "the juvenile court exceeded its statutory authority and invaded DHR's authority . . . by directing particular placements for the children in its permanency review orders"). In short, the juvenile court cannot remedy the systemic deficiencies in DHR's policies and practices.

Here too, numerous courts have agreed that where, like here, Plaintiffs seek relief from systemic agency failures, individual juvenile court proceedings are an inadequate forum. *LaShawn A. ex rel. Moore v. Kelly*, 990 F.2d 1319, 1322-23, (D.C. Cir. 1993) (family court proceedings are not appropriate for a "multi-faceted class-action challenge to the District of Columbia's administration of its entire foster-care system."); *see Lahey v. Contra Costa Cty. Dep't of Children and Family Servs.*, No. C01–1075 MJJ, 2004 WL 2055716, at *11-12 (N.D. Cal. Sept. 2, 2004) (juvenile or family courts are not "equipped to hear cases of constitutional dimension"); *Connor B. ex rel. Virgus v. Patrick*, 771 F.Supp.2d 142, 158 (D. Mass. 2011) (juvenile courts "cannot and do not afford Plaintiffs an adequate opportunity to seek relief for the systemic failures alleged in the complaint"); *People United for Children, Inc. v. City of New York*, 108 F.Supp.2d 275, 291-92 (S.D.N.Y. 2000) ("Because child protective proceedings must focus on the narrow issue of the child's health, safety, and welfare in a particular case, they do not

provide these plaintiffs with an adequate opportunity to raise their constitutional claims.").

Relying solely on *31 Foster Children*, however, Defendant asserts that dependency proceedings provide an adequate remedy because "the juvenile court can act to protect children in its jurisdiction." Doc. 20 (*Def.'s Br.*) at 80. But Defendant's perfunctory assertion misunderstands the key difference between this case and *31 Foster Children*. As noted above, unlike in this case, plaintiffs in *31 Foster Children* sought orders preventing the state from, among other things, ever placing a foster child in an unsafe placement and asked the district court to "appoint a panel . . . to implement a systemwide plan to revamp and reform dependency proceedings in Florida." 329 F.3d at 1279-80. Thus, it was relevant in that case that the juvenile court was available to consider the safety of any particular child in his or her placement. Here, by contrast, the issue is whether DHR's placement and service array and transition policies and practices are adequate. That is not an issue that the juvenile court can address in an individual dependency proceeding.

As a result, abstention is inapplicable to this case. Not only are juvenile dependency proceedings not the type of proceedings that can trigger abstention, but the relief Plaintiffs seek neither interferes with those proceedings nor is it available in them.

55

CONCLUSION

Plaintiffs raise cognizable claims that Defendant discriminates against them by unjustifiably segregating them in psychiatric residential treatment facilities. Plaintiffs' unnecessary confinement at Defendant's hands "severely diminishes" their "everyday life activities . . . , including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Olmstead v. L.C.*, 527 U.S. 581, 600-601 (1999). This confinement is unlawful under the ADA and Section 504, and Plaintiffs have demonstrated that they may seek relief in this Court. For all the foregoing reasons, Defendant's motion to dismiss should be denied.

Dated: August 11, 2021

<div style="margin-left:40%">

Respectfully Submitted,

ALABAMA DISABILITIES ADVOCACY
PROGRAM

/s/ Nancy Anderson
Nancy Anderson
Ala. Bar No. ASB 3738-R67N
Rhonda Brownstein
Ala. Bar No. ASB 3193-O64R
Andrea J. Mixson
Ala. Bar No. ASB 2155-R79M
Larry Canada
Ala. Bar No. ASB 3153-N73L
2008 12th Street
Tuscaloosa, AL 35401
(205) 348-4928
nanderso@adap.ua.edu

</div>

rbrownstein@adap.ua.edu
amixson@adap.ua.edu
lcanada@adap.ua.edu

SOUTHERN POVERTY LAW CENTER

/s/ Michael Tafelski
Michael Tafelski
Ala. Bar No. ASB 4400A33A
Claire Sherburne
Ala. Bar No. ASB 1121A61H
Sophia Mire Hill (admitted *pro hac vice*)
La. Bar No. 36912
403 Washington Ave.
Montgomery, AL 36104
(888) 414-7752
michael.tafelski@splcenter.org
claire.sherburne@splcenter.org
sophia.mire@splcenter.org

CHILDREN'S RIGHTS

/s/ Aaron Finch
Christina Wilson Remlin
(admitted *pro hac vice*)
NY Bar No. 4357323
Aaron Finch (admitted *pro hac vice*)
NY Bar No. 5140033
Lindsey Frye (admitted *pro hac vice*)
NC Bar No. 47752
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
(212) 683-4015 (fax)
cremlin@childrensrights.org
afinch@childrensrights.org
lfrye@childrensirghts.org

**ATTORNEYS FOR PLAINTIFFS**

57

## CERTIFICATE OF SERVICE

I certify that I have on this day filed the foregoing document with the clerk of

the court and electronically served the following persons:

Felicia M. Brooks
Jonathan S. Schlenker
Joshua L. Lane
Office of the Attorney General
Felicia.brooks@dhr.alabama.gov
Jonathan.schlenker@dhr.alabama.gov
Josh.lane@dhr.alabama.gov
Attorneys for Defendant

Alfred H. Smith, Jr.
Jennifer H. Wheeler
Elizabeth N. Terenzi
Bainbridge, Mims, Rogers & Smith, LLP
asmith@bainbridgemims.com
jwheeler@bainbridgemims.com
bterenzi@bainbridgemims.com
Attorneys for Defendant

Dated: August 11, 2021

/s/ Michael Tafelski
One of the Attorneys for Plaintiffs