IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| A.A. a minor, by Jenny Carroll, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:21CV367-ECM |
| | ) | (wo) |
| NANCY T. BUCKNER, Commissioner of | ) | |
| the Alabama Department of Human | ) | |
| Resources, in her official capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is a motion to dismiss filed by the Defendant, Nancy Buckner (doc. 23); a motion to appoint next friends, filed by the Plaintiffs (doc. 30); and a motion to file surreply, filed by the Plaintiffs (doc. 36).

The Plaintiffs filed a Class Action Complaint for Declaratory and Injunctive Relief (doc. 1), on May 20, 2021. They bring claims of discrimination in violation of the Americans with Disabilities Act (ADA)(count one) and discrimination in violation of Section 504 of the Rehabilitation Act (count two).

The Defendant, Nancy Buckner, Commissioner of the Alabama Department of Human Resources (DHR) has moved to dismiss the complaint.

The Plaintiffs have moved for Jenny Carroll to be named next friend for Plaintiffs A.A. and B.B., for Christine Freeman to be named next friend for Plaintiff D.D., and for C.G. to be named next friend for Plaintiff C.C.

Upon consideration of the motions, the briefs, including the surreply filed by the Plaintiffs, the record, and applicable law, and for reasons to be discussed, the motion to appoint next friends is due to be GRANTED and the motion to dismiss is due to be GRANTED, but the Plaintiffs will be given time to file an amended complaint.

## I.   FACTS

The facts alleged by the Plaintiffs in the complaint are as follows:

The Plaintiffs are youths with mental impairments in the custody of the DHR who have been removed from their families and are placed in, or are at risk of being placed in, psychiatric residential treatment facilities (PRTFs). The Defendant Commissioner of DHR is sued in her official capacity.

PRFTs are non-hospital residential facilities that provide mental heath services to individuals who are Medicaid-eligible under the age of 21. (Doc. 1 at 2). The complaint alleges that youth in PRTFs are cut off from family and friends and have few opportunities to interact with persons without a disability.  Placement is also alleged to prevent the formation of meaningful relationships with adults, leading to toxic stress. The complaint alleges that DHR overuses residential facilities for children in foster care, so that fifty-two percent of all children and youth in residential facilities are placed in PRTFs. The complaint further alleges that DHR unjustifiably places and maintains children in PRTFs because it fails to fulfill its duty to procure, support, and maintain family homes and integrated community settings. (*Id.* at 18).

The amended complaint cites to a 2018 report to the federal government in which the complaint alleges that DHR admitted that it has relied on institutional placements because it lacks sufficient community-based alternatives, and reports in 2019 and 2020 that DHR needs more resource families to lessen its dependence on congregate care facilities. (*Id.* at 21).

The complaint asserts that DHR has the framework for providing necessary mental and behavioral health services, but rather than expand programs, DHR continues a discriminatory policy of unnecessarily institutionalizing youth in segregated placements.

The complaint separately alleges that children who should have been evaluated and stepped down to family homes and other integrated community settings are discriminated against and forced to stay in facilities longer than necessary. The Plaintiffs challenge the PRTFs level system to determine whether a child has completed the program and can be stepped down to a less restrictive placement. The Plaintiffs also challenge the conditions within certain of the PRTFs.

The Plaintiffs allege that they are eligible for community-based placement. With regard to A.A., the complaint alleges more specifically that in August 2020, DHR determined that A.A. was ready to be moved to a less restrictive environment, but A.A. has not been moved. (*Id.* at 7).

The complaint asks the Court to award prospective injunctive relief requiring the Defendant to develop and sustain sufficient capacity of community-based placements and services to meet the needs of Alabama's children in foster care with mental impairments;

3

to implement and sustain an effective system to ensure youth in foster care with mental impairments are timely transitioned to integrated settings in the community; and to successfully transition Plaintiffs to integrated settings in the community. (*Id.* at 32-3).

## II. LEGAL STANDARDS

### A. Motion to Appoint Next Friends

Federal Rule of Civil Procedure 17 provides that a minor may bring a lawsuit in federal court through a representative, such as a general guardian, a committee, a conservator, or a like fiduciary. FED. R. CIV. P. 17(c)(1).

### B. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard.

4

*Twombly*, 550 U.S. at 555, 570.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, may be a factual or facial attack on subject matter jurisdiction. *Barnett v. Okeechobee Hosp.,* 283 F.3d 1232, 1238 (11th Cir. 2002). A factual attack permits the district court to weigh evidence outside the pleadings to satisfy itself of the existence of subject matter jurisdiction in fact. *Id.* at 1237. However, a facial attack merely questions the sufficiency of the pleading. *Id.*  Under a facial attack, the district court accepts the plaintiff's allegations as true and need not look beyond the face of the complaint to determine whether the court has subject matter jurisdiction. *Id.*

### III.   DISCUSSION

**A. Motion to Appoint Next Friends**

The Plaintiffs originally sought appointment of next friends for A.A, B.B., C.C., and D.D.  Plaintiff A.A. turned 19 while the motion was pending and no longer requires a next friend. (Doc. 40-1).  The Defendant concedes that C.G., C.C.'s uncle, is an appropriate next friend. (Doc. 34 at 7).  At issue, therefore, are the requests for Jenny Carroll ("Carroll") to be named next friend for B.C. and for Christine Freeman ("Freeman") to be named next friend for D.D.

The Defendant opposes the naming of these next friends, arguing primarily that while Carroll and Freeman are successful professionals, they are not appropriate next friends because they are "ideological next friends," and do not have a sufficiently significant relationship with the Plaintiffs. The Defendants also point out that the Plaintiffs are represented by guardians ad litem in state court.

In the Eleventh Circuit, proceeding by next friend is appropriate where the real party in interest cannot appear on his own behalf and the next friend is truly dedicated to the best interests of the person she represents. *Shanchez-Valasco v. Sec'y of Dep't of Corr.*, 287 F.3d 1015, 1025 (11th Cir. 2022). A significant relationship is not required. *See Lonchar v. Zant*, 978 F.2d 637, 641 (11th Cir. 1992) (next friend must show "some relationship or other evidence that would suggest that the next friend is truly dedicated" to plaintiff's interest)(emphasis added). The Plaintiffs argue that where, as here, children lack significant ties with their parents and have been placed under the state's legal custody, a significant relationship is not required, citing *Sam M. v. Carcieri*, 608 F.3d 77, 87 (1st Cir. 2020).

The Plaintiffs support their motion to appoint next friends with declarations which state that the proposed next friends appear for the sole purpose of vindicating Plaintiffs' rights to be placed in non-segregated environments and to be free from harm, have no individual motivations, have met with each child on whose behalf they now appear, and have determined that they can genuinely represent the best interests of those children in this action. (Doc. 30-1 at 13-14, 25-26). The Plaintiffs also point to the statutory authority

6

of guardians ad litem in Alabama and take the position that guardians ad litem are not authorized to represent children in federal court litigation and so cannot serve as next friends here. *See* ALA. CODE § 12-15-304 (outlining responsibilities of guardian ad litem in dependency and termination of parental rights proceedings).

A similar next friend request has been approved by a court outside of this circuit, and this Court is persuaded by its analysis that a non-family member next friend is appropriate where state law does not confer general authority on guardians ad litem to represent children outside of family court and the children are in the care of the state and not their natural parents. *See Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 89 (1st Cir. 2010).

Upon review of the submitted declarations and the applicable law, this Court concludes that C.G., Carroll, and Freeman meet the requirements of Rule 17(c) and that the motion is due to be GRANTED.

**B. Motion to Dismiss**

The Defendant moves for dismissal of the Plaintiffs' claims on the basis of lack of standing, Eleventh Amendment immunity, *Younger v. Harris,* 401 U.S. 37 (1971) abstention, and failure to state a claim.

*1. Standing*

The Defendant's first argument with respect to standing arises from the requested next friends. The Defendant argues that the Plaintiffs lack standing because they do not have appropriate next friends to represent them. The Court having found the requested

next friends to be appropriate under Rule 17, as discussed above, even assuming without deciding that this argument is appropriately raised as a standing argument, it does not apply in this case.

The Defendant also argues that the Plaintiffs lack standing to bring claims on behalf of all children placed or at risk of being placed in PTRFs. She argues that the Plaintiffs have received appropriate treatment and that the placement injuries pointed to are not redressable by DHR because others, including the state's courts, make the placement decisions.

When injunctive relief is sought, "injury-in-fact" is demanded by Article III of the Constitution. *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). The Declaratory Judgment Act also is said to echo the "case or controversy" requirement of Article III when it "provides that a declaratory judgment may only be issued in the case of an actual controversy." *See Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985)(citing 28 U.S.C. § 2201). Injury in fact is shown if the injury is concrete and particularized, fairly traceable to the challenged action of the defendant, and it is likely that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlow Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

The Plaintiffs contend that this case does not concern individual placement decisions, but instead concerns DHR's own system-wide failures to develop services and placement resources. (Doc. 31 at 34). They argue that they seek to expand the availability of community-based placements and supports so that the Plaintiffs and the class they seek

to represent can live in integrated community settings. They point to the allegations of the complaint that DHS's reporting to the federal government admits that it over-relies on institutional placements because it lacks sufficient community-based alternatives, (doc. 1 para. 133), and that DHR is charged with the responsibility of administrating its services and programs in the most integrated setting appropriate to the needs of children with mental impairments. (*Id.* para. 91).

It appears to the Court that, fairly read, the complaint seeks relief on the basis that the Plaintiffs could be placed in residential or integrated placements if those services were provided by DHR, but DHR's failure to satisfy its obligation to provide those options means that the Plaintiffs cannot be so placed. Contrary to the Defendant's reading of the complaint, under this theory, it is not the initial placement in PRTFs that is at issue, but rather the continued placement there due to a lack of integrated placement options.

"[A] sanction that effectively abates" conduct is a form of redress. *Friends of the Earth, Inc.*, 528 U.S. at 185-86. The complaint plausibly alleges that the Plaintiffs are eligible for integrated placements, but the failure of the Defendant to make those options available is the reason there has not been a change in placement. The complaint alleges that it is DHR which can provide the needed services. To that extent, therefore, there is redressability, so there is standing. *Id.*

The Court agrees, however, that the complaint also can be read to seek relief through individual placement decisions. The request for relief at the end of the complaint asks the Court to award prospective injunctive relief requiring the Defendant to "successfully

9

transition Plaintiffs to integrated settings in the community." (Doc. 1 at 33). In their brief, the Plaintiffs characterize this request for relief as injunctive relief that would require DHR to "provide Plaintiffs with access to these services so that they may be ultimately transferred to community based-placements." (Doc. 31 at 61). The "ultimately transferred" language is not present in the complaint, however. To the extent, therefore, that the complaint requests relief for an injury that is not redressable by the Defendant, the Court will give the Plaintiffs an opportunity to file an amended complaint to clarify their requested relief so that it conforms to their characterization of it in their brief.

### 2. *Eleventh Amendment Immunity*

The Defendant contends that as the Commissioner of DHR she cannot be sued, nor can attorneys' fees and costs be awarded, under the Eleventh Amendment to the Constitution of the United States. Prospective injunctive relief can be sought against a State official in her official capacity, however. *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995)("[T]he Eleventh Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief."). In addition, fees awarded ancillary to prospective relief are not barred by the Eleventh Amendment. *See LaFleur v. Wallace State Comm. Coll.*, 955 F. Supp. 1406, 1423 (M.D. Ala. 1996). Therefore, this argument by the Defendant is unavailing.

### 3. *Abstention*

As a general rule, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In other words, "non-abstention" is the rule, and courts should exercise their jurisdiction. *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). *Younger* abstention, however, is an exception to this general rule.

The *Younger* doctrine applies in just three "exceptional" circumstances, which have been identified as: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) civil proceedings involving certain orders uniquely in furtherance of the state court's ability to perform its judicial functions. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)(citing *New Orleans Public Service, Inc.* (*NOPSI*) *v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989)); *see also Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1267 (11th Cir. 2019). Where one of these exceptional circumstances is present, the Court must then evaluate the three factors identified in *Middlesex County Ethics Commission v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). These include whether (1) there is an "ongoing" state-court proceeding at the time of the federal action; (2) the state proceeding implicates an important state interest; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims. *Middlesex*, 457 U.S. at 432. *Younger* abstention is not triggered unless the federal relief would create an undue interference with state proceedings and the state proceedings at issue involve orders that uniquely further the state courts' ability to perform their judicial functions. *Wexler v. Lepore*, 385 F.3d 1336, 1339

11

(11th Cir. 2004). *Younger* abstention applies to claims for injunctive relief, as well as to claims for declaratory judgment, that would effectively enjoin state proceedings. *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261 (11th Cir. 1997).

The Defendant argues that *31 Foster Children* governs this case and requires this Court to abstain. In that case, the plaintiffs claimed the Florida foster care system violated the federal constitution because it did not provide safe care that met their basic needs, prompt placements with permanent families, or services that extended beyond eighteen years, among other things. 329 F.3d at 1261. The court applied the *Middlesex* factors and explained that because the plaintiffs were seeking relief that would interfere with ongoing state dependency proceedings by placing decisions that were in the hands of the state courts under the direction of the federal district court, *Younger* abstention applied. *Id.* at 1278. The court specifically pointed to a need for a determination by the federal court of whether a placement was best for a particular plaintiff or whether sufficient efforts were being made to find an adoptive family. *Id.* The court acknowledged that the requested remedial order would be against the state agency, not a court, but reasoned that it is the duty of the state courts to decide whether to approve a case plan and to monitor the plan. *Id.*

The Plaintiffs argue that this Court is not bound by *31 Foster Children* because it was decided before *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), where the Supreme Court described the three categories of cases appropriate for *Younger* abstention. The Plaintiffs' argument is that the *31 Foster Children* court applied the *Middlesex* factors without first deciding whether the case fell within the scope of *Younger*. In the Plaintiffs'

12

view, *Younger* abstention does not apply here because juvenile court proceedings are not the kind of state-court processes that implicate *Younger* abstention. The Plaintiffs cite to non-binding cases involving dependency proceedings and placements where *Younger* abstention was found not to apply.

This Court first notes that *Sprint Commc'ns, Inc.* is not the first case to describe the *Younger* abstention categories, but that it in fact referenced cases decided before *31 Foster Children*. 571 U.S. at 78. Furthermore, upon close review of the *31 Foster Children* opinion, it appears that the issue of whether the case fell within the scope of *Younger* was considered by the court. In its discussion, the court cited a decision from another circuit for the proposition that the "three-part test we derived from *Middlesex* is a suitable guide for analysis only when the threshold condition for *Younger* abstention is present . . . ." *31 Foster Children*, 329 F.3d at 1261 (quoting *Green v. City of Tucson*, 255 F.3d 1086, 1097 (9th Cir. 2001)). This citation includes a reference to both the threshold *Younger* categories and the *Middlesex* factors. This Court cannot conclude, therefore, that *31 Foster Children* is not controlling here based merely on the timing of the decision.

The Plaintiffs also argue that *31 Foster Children* can be distinguished on the facts. They argue that the three *Middlesex* factors do not require abstention in this case because, unlike in *31 Foster Children*, the Plaintiffs seek systemic reform that can only be accomplished by DHR, not the juvenile courts, and do not seek relief in the form of individual placement decisions.

13

The Defendant argues that because juvenile cases are reviewed routinely by an Alabama juvenile judge regarding the placement of the child, the relief requested in the complaint falls within the holding of *31 Foster Children*. The Defendant does not address the Plaintiffs' broader theory, but points specifically to the part of the complaint which requests that the Court enjoin the Defendant "to successfully transition Plaintiffs to integrated settings in the community." (Doc. 1 at 34). As noted earlier, in their brief, the Plaintiffs characterize this request for relief as injunctive relief that would require DHR to "provide Plaintiffs with access to these services so that they may be ultimately transferred to community based-placements." (Doc. 31 at 61). The "ultimately transferred" language is not present in the complaint, however.

It appears that the aspect of the request for relief as pleaded in the complaint, not as recharacterized in the brief, that the Court order the Defendant to transition the Plaintiffs to integrated settings, is akin to a request for a placement decision. Such a request falls within the holding of *31 Foster Children* and, therefore, under the *Middlesex* factors, requires this Court to abstain.

The systemic relief sought in the complaint, however, is distinguishable from the relief in *31 Foster Children*. In examining that aspect of the claims, this Court finds persuasive an opinion from another district in this circuit. *See Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 288 (N.D. Ga. 2003). In that case, foster children sought relief on a system-wide basis to institute reforms. *Id.* The court distinguished *31 Foster Children* in part because the plaintiffs did not ask for individualized determinations with respect to

14

particular foster children, but sought relief on a system-wide basis in the form of reforms to ensure that deprived children's constitutional and statutory rights are not violated. *Id.*

In the instant case, instead of potentially interfering with ongoing state dependency proceedings by placing decisions that were in the hands of the state courts under the direction of the federal district court, one aspect of the requested relief asks the Court to require DHR to provide integrated housing services system-wide so that those services will be available to the Plaintiffs if the Plaintiffs are eligible for them. This aspect of the case, therefore, is distinguishable from *31 Foster Children. See Kenny A. ex rel. Winn*, 218 F.R.D. at 288. Because the complaint contains claims not subject to abstention under *Middlesex*, the Court will afford the Plaintiffs the opportunity to file an amended complaint which includes only claims consistent with the position they take in their brief; namely, that they seek only systemic relief for DHR's failure to provide services in violation of the ADA and Rehabilitation Act.

### *4. Failure to State a Claim*

To state a claim for relief under the ADA or Section 504 of the Rehabilitation Act, plaintiffs must allege that they are (1) qualified with a disability, (2) excluded from participation in or denied the benefits of a program offered by a public entity, and (3) the discrimination was by reason of the disability. *Bircoll v. Miami-Dade Cty*., 480 F.3d 1072, 1083 (11th Cir. 2007). The claims here are specifically brought pursuant to *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999), which held that public entities are required to provide community-based services to persons with disabilities when treatment

professionals have determined that such services are appropriate, the person does not oppose community-based treatment, and such treatment can be reasonably accommodated.

The Defendant contends that the Plaintiffs have failed to state a claim of disability discrimination because they have not alleged that they are substantially limited in one or more major life activities.

In their brief, the Plaintiffs argue that they have sufficiently pleaded that they are qualified individuals, arguing that they have alleged that they are substantially limited in one or more major life activities, and that the Defendant treats them for and regards them as having mental impairments that substantially limit major life activities because they confined to PRTFs. (Doc. 31 at 21). The complaint, however, alleges that each of the Plaintiffs has a mental impairment or has a record of such impairment. (Doc. 1 paras. 202 & 213 ). The complaint does not plead that the Defendant regarded the Plaintiffs as having mental impairments, although the Plaintiffs' arguments in brief appear to reflect an intent to proceed on a theory that DHR regarded them as having disabilities. *See Hilburn v. Murata Elecs. N. Am., Inc*., 181 F.3d 1220, 1226 (11th Cir. 1999)(a plaintiff is deemed to be "disabled" for purposes of the ADA if she satisfies any one of these three definitions: a physical or mental impairment that substantially limits one or more of the major life activities of an individual; a record of such impairment; or, being regarded as having such impairment). Therefore, the Court will allow the Plaintiffs to amend their claims to include facts referred to in their brief but not included in the complaint.

The Defendant also moves to dismiss the claims of Plaintiffs B.B., C.C., and D.D. on a ground newly raised in the reply brief. The Defendant acknowledges that Plaintiff A.A. has alleged that DHR has determined that she is ready to be moved to a less restrictive environment, but contends that B.B., C.C., and D.D. have only made a conclusory allegation that they are eligible for a community-based placement. The Defendant alleges that the failure to allege that an ADHR treatment professional, or any other professional, has determined that community-based placement is appropriate means that B.B., C.C., and D.D. have failed to state a claim.

The Plaintiffs have filed a surreply, which the Court has considered because it responds to the newly raised argument. In it, they argue that the law does not require them to allege a determination of eligibility by any professional, citing cases including *Georgia Advoc. Off. v. Georgia*, 447 F. Supp. 3d 1311, 1323 (N.D. Ga. 2020)).

In *Georgia Advoc. Off*, students challenged being placed in special education settings and argued that they should have been educated in a more integrated setting. *Id.* The court examined whether an *Olmsted* claim had been stated where plaintiffs "allege qualified professionals determined GNETS students could be educated in a more integrated setting," without an allegation that a state treatment professional determined that community placement would be appropriate. *Id.* The court found the plaintiffs' allegations to be sufficient because "it would be illogical to make plaintiffs suing a state for an *Olmstead* violation to rely on an opinion from that state's professionals." *Id.* at 1322–23.

17

This Court is persuaded by the reasoning that a state treatment professional's opinion is not required to state a claim where, as here, the Plaintiffs are bringing an *Olmstead* claim against DHR. However, that conclusion does not also mean that no allegation of any professional's determination is required. In fact, the complaint in *Georgia Advoc. Off.* did allege that qualified experts supported the plaintiffs' contentions. *Id.*

Complicating the inquiry in the instant case is the issue of *Younger* abstention. The Plaintiffs' theory in this case is that youth continue to be housed in PRTFs because of the Defendant's failure to provide integrated housing services. *Younger* abstention concerns are raised if the Plaintiffs' theory requires a placement determination by this Court. *31 Foster Children*, 329 F.3d at 1278. On the other hand, if a determination has already been made that the Plaintiffs would be eligible for services if those services existed, the claim for relief seemingly would not require a particularized placement decision by this Court. Therefore, the Court will give the Plaintiffs additional time to re-plead the claims of B.B., C.C., and D.D. so that they can plead additional facts for those Plaintiffs as they have for A.A.; namely, that a professional, not necessarily a DHR treatment professional, has determined that they are eligible for community-based placement if the Plaintiffs can so plead consistent with the requirements of *Federal Rule of Civil Procedure* 11.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The motion to appoint next friends (doc. 30.) is DENIED as moot as to A.A. and is GRANTED as to B.B., C.C., and D.D. Jenny Carroll is named next friend

    for B.B., C.G. is named next friend for C.C., and Christine Freeman is named next friend for D.D.

2. The motion to file surreply (doc. 36) is GRANTED.

3. The motion to dismiss (doc. 23) is GRANTED to the extent that the Plaintiffs' claims are DISMISSED without prejudice to being re-pleaded.

The Plaintiffs have until **November 19, 2021** to file a new, amended complaint which is complete unto itself; which sufficiently alleges the elements of their claims in a manner consistent with this Memorandum Opinion and Order; and which clarifies their requested relief.

DONE this 29th day of October, 2021.

                        /s/ Emily C. Marks
                        EMILY C. MARKS
                        CHIEF UNITED STATES DISTRICT JUDGE