# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| A.A., A MINOR, ) <br> BY JENNY CARROLL, ) <br> her Next Friend; B.B.; ) <br> C.C., a minor, by C.G., his Next ) <br> Friend; and D.D, a minor, by ) <br> CHRISTINE FREEMAN, his Next ) <br> Friend; and E.E., a minor, by ) <br> CHRISITNE FREEMAN, her Next ) <br> Friend, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NANCY BUCKNER, ) <br> Commissioner of the Alabama ) <br> Department of Human Resources ) <br> In her official capacity ) <br> ) <br> Defendant. ) | Civil Action No. <br> 2:21-CV-00367-ECM-SRW |

## MOTION TO QUASH SUPOENA SERVED BY DEFENDANT ON THE ALABAMA DISABILITIES ADVOCACY PROGRAM, A NON-PARTY AND LEGAL COUNSEL FOR PLAINTIFFS

Now into Court, comes the Alabama Disabilities Advocacy Program, a non-party to this action, but which is legal counsel for Plaintiffs, who move this court for an order quashing a subpoena served upon it by Defense Counsel under Federal Rules of Civil Procedure Rule 45 on the grounds that the subpoena seeks clearly privileged and confidential information, is unduly burdensome, and is not relevant to any issue before the court, all as is more fully set forth in the attached memorandum in support of this motion to quash. Movant incorporates the attached memorandum as set forth fully herein.

**Dated: October 12, 2022**

**Respectfully Submitted**

**ALABAMA DISABILITIES ADVOCACY PROGRAM**

Larry G. Canada ASB 3153-N73L
Nancy Anderson ASB 3738-R67N
Andrea Mixson ASB 2155-R79M
Attorneys at The Alabama Disabilities Advocacy Program
2008 12th Street
Tuscaloosa, AL 35401
(205)348-4928
lcanada@adap.ua.edu
nanderson@adap.ua.edu
amixson@adap.ua.edu

## Certificate of Service

I hereby certify that on October 12, 2022, I served the foregoing by electronic mail upon the following counsel of Record:

Counsel for Defendant
Alfred F. Smith, Jr.
Jennifer H. Wheeler
Bainbridge, Mims, Rogers & Smith, LLP
600 Luckie Drive, Ste. 415
Birmingham, Alabama 35223
Email: asmith@bainbridgemims.com
jwheeler@bainbridgemims.com

Felicia M. Brooks
Jonathan S. Schlenker
Joshua J. Lane
State of Alabama
Department of Human Resources
Legal Office
P.O. Box 304000
Montgomery, AL 36130-4000
Email: felicia.brooks@dhr.alabama.gov
Jonathan.schlenker@dhr.alabama.gov
Joshua.lane@dhr.alabama.gov

Counsel for Plaintiffs – Southern Poverty Law Center
Ms. Claire Sherburne

Mr. Michael J. Tafelski
Ms. Sophia Mire Hill
403 Washington Ave.
Montgomery, AL 36104
Email: claire.sherburne@splcenter.org
Michael.tafelski@splcenter.org
Sophia.mire@splcenter.org

Counsel for Plaintiffs – Children's Rights
Mr. Aaron Finch
Ms. Lindsey Frye
88 pine Street Suite 800
New York, New York 10005
Email: afinch@childrensrights.org
lfrey@childrensrights.org

Larry G. Canada
Alabama Disabilities Advocacy Program

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| A.A., A MINOR, )<br>BY JENNY CARROLL, )<br>her Next Friend; B.B.; )<br>C.C., a minor, by C.G., his Next )<br>Friend; and D.D, a minor, by )<br>CHRISTINE FREEMAN, his Next )<br>Friend; and E.E., a minor, by )<br>CHRISTINE FREEMAN, her Next )<br>Friend, )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>NANCY BUCKNER, )<br>Commissioner of the Alabama )<br>Department of Human Resources )<br>In her official capacity )<br>)<br>    Defendant. ) | Civil Action No.<br>2:21-CV-00367-ECM-SRW |

## MEMORANDUM IN SUPPORT OF
## MOTION TO QUASH SUPOENA SERVED BY DEFENDANT
## ON THE ALABAMA DISABILITIES ADVOCACY PROGRAM,
## A NON-PARTY AND LEGAL COUNSEL FOR PLAINTIFFS

Defendant has sought discovery from counsel for Plaintiffs in this action, The Alabama Disabilities Advocacy Program ("ADAP"), by serving a subpoena on them. See Exhibit 1. This is not Defendant's first attempt to obtain essentially the same irrelevant information from counsel for Plaintiffs. Defendant first served Interrogatories and Request for Production on Plaintiffs seeking essentially the same information and documentation from ADAP. Plaintiffs entered objections at that time asserting several privileges including that such a request of counsel for Plaintiffs was inappropriate. See Exhibit 2. Defendant again seeks to obtain documentation from ADAP that is not only not relevant to any issue before the court, but which is privileged, highly confidential by definition under 42 C.F.R. § 51.45(a)(1), is burdensome, is intended to harass ADAP, and is not likely to lead to discoverable information or information related to any issue before this court.

## Origins of the P&A Systems

Willowbrook State School, located in New York City, was an institution designed to house 4000 residents who had mental disabilities. When Robert F. Kennedy toured that facility in 1965, it housed closer to 6000 residents. The conditions were so poor, and the facility was so understaffed, that he referred to it as a "snake pit." However, nothing changed until 1972 after reporter Geraldo Rivera did an exposé of the conditions at Willowbrook which highlighted the overcrowding, lack of sanitation, understaffing and physical and sexual abuse of the residents.

In 1975, after a congressional inquiry following the Willowbrook exposé, the nationwide P&A system was launched with the creation of the Protection and Advocacy for Persons with Developmental Disabilities ("PADD") program. 42 U.S.C. § § 15041-15045. Each state was required to establish a P&A system to protect and advocate for the rights of individuals with developmental disabilities within that state. ADAP is the designated P&A for the State of Alabama.

Over time, Congress has enacted eight other federally funded programs to further protect the rights of the disabled: the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801-10851; the Protection and Advocacy for Individual Rights Program of the Rehabilitation Act, ("PAIR") 29 U.S.C. § 794e; Protection and Advocacy for Assistive Technology ("PAAT"), 29 U.S.C. §§ 3001-3058; Protection and Advocacy for Beneficiaries of Social Security ("PABSS"), 42 U.S.C. §§ 1320b-21; Protection and Advocacy for Individuals with Traumatic Brain Injury ("PATBI"), 42 U.S.C §§ 300d-53; Protection and Advocacy for Voting Access ("PAVA"), 52 U.S.C. §§ 21061-21062; the Client Assistance Program ("CAP"), Public Law 113-128; Protection and Advocacy for Beneficiaries with Representative Payees ("PABRP"), Public Law 115 – 165. Each of these acts spells out the authority given to each P&A and the protections that must be set in place to protect the information gathered as a result of the exercise of that authority.

## P&A Authority

ADAP, as Alabama's designated P&A system, derives its authority through the above-mentioned federal acts and their corresponding federal regulations. Initially, PADD gave ADAP authority to monitor facilities; investigate incidents of abuse and neglect; and the authority to pursue legal, administrative, and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. 42 U.S.C. § 15043(a)(2). Congress extended that same scope of authority to protect and advocate for individuals with mental illness when it enacted PAIMI in 1986, 42 U.S.C. § 10805(a)(1), and again when PAIR was enacted in 1993.

As part of their congressionally mandated mission, P&As, as providers of legal services, are given broad authority to protect the rights and well-being of persons with disabilities, including those living in congregate care facilities – who are often isolated from their families and communities, at risk of abuse and neglect, and who are unfamiliar with their rights.

For instance, P&As have authority to investigate suspected or reported cases of abuse and neglect of individuals with disabilities if the incidents are reported to the system or if there is probable

cause to believe that the incidents occurred. 42 U.S.C. § 15043 (a)(2)(B); 42 U.S.C. § 10801(b)(2)(B). P&As are granted access to unaccompanied and private meetings and interviews with individuals with disabilities at reasonable times in a location in which services, supports, and other assistance are provided to such individuals in order to carry out their investigative functions. 42 U.S.C. § 15043(a)(2)(H); 45 C.F.R. § 1386.27(b); 42 C.F.R. § 51.42.

Not only does a P&A have the right to meet with individuals to conduct investigations of suspected abuse and neglect, it has the right to regularly monitor the care and treatment that individuals receive. 42 C.F.R. § 51.42(c). To accomplish this mandate, the PAIMI regulations provide that P&As have the right to regularly meet with individuals in person, privately and unaccompanied:

> **Unaccompanied access to residents** shall include the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person.

42 C.F.R. § 51.42(d) (emphasis added).

The purpose behind the mandate for unaccompanied and private access is to ensure a robust exchange of information between the P&A and vulnerable individuals with disabilities who are uniquely at risk of abuse and neglect, may be isolated from their families and communities, may not understand their rights and – chillingly – who may fear retaliation from the very providers who are supposed to support, treat, and care for them.

Finally, P&As are authorized to obtain records related to individuals, especially including in relation to an investigation related to reported or suspected cases of abuse or neglect. 42 U.S.C. §§ 15043(I &J); 42 U.S.C. § 10805(a)(4).

In short, in order to protect the rights of the disabled, federal law grants P&As unprecedented access to individuals, facilities, and records in order to conduct monitoring, investigations, and the other authorized services mandated in the P&A enabling statutes.

### Confidentiality

With the P&A's broad access authority to sensitive and confidential information and records, comes the significant legal mandate to secure the confidentiality of that information. 42 U.S.C. § 10806.

For example, the PADD implementing regulations provide that "records maintained by the P&A system are the property of the P&A system which must protect them from loss, damage, tampering, [or] unauthorized use." 45 C.F.R. § 1386.28. Under PADD, the P&A must keep confidential information related to: "(i) Clients; (ii) Individuals who have been provided general information or technical assistance on a particular matter; (iii) The identity of individuals who report incidents of abuse or neglect, or who furnish information that forms the basis for a determination that probable cause exists; and (iv) Names of individuals who have

received services, supports or other assistance, and who provided information to the P&A for the record. (v) Peer review records." 45 C.F.R. § 1386.28 (b)(1).

Similarly, under PAIMI, records maintained by the P&A system are the property of that P&A system. The P&A must safeguard the confidentiality of its records, including information related to clients, individuals who have been provided general information or technical assistance on a particular matter, the identity of individuals who report incidents of abuse or neglect to the system, and the names of individuals who are residents and provide information for the record. 42 C.F.R. §51.45.

The federal mandate of keeping the records ADAP has obtained under its federally granted authority is very specific: ADAP must maintain those records with the utmost confidentiality and may not disclose them.

Defendant now seeks to undermine the mission and authority of ADAP by purposely seeking what she knows is confidential and privileged information. By seeking notes from visits and interviews conducted by ADAP employees under ADAP's statutory authority, Defendant seeks to see, read, and maintain what she is not entitled to obtain. To allow the Defendant access to ADAP's records would be akin to allowing a state employee to sit in on ADAP's interviews with residents, its abuse and neglect investigations, and its regular monitoring activities all of which, as described above, are to be unaccompanied in order to protect individuals with disabilities. The purpose of this unaccompanied access is to allow ADAP to obtain information from residents about the conditions and treatment they receive while institutionalized by the State. Residents are told about the access authority that ADAP has and that what is said is confidential. Residents can freely relate their stories under these circumstances and under the protections of the federal regulations. To allow disclosure of the information maintained by ADAP in pursuance of its protection and advocacy mandate is to make a mockery of the protections afforded to individuals with disabilities and to nullify ADAP's authority as the P&A.

### ADAP as a law firm

As a P&A agency, ADAP is a law firm. There are 12 Alabama licensed attorneys employed at ADAP. ADAP would not be able to accomplish its protection and advocacy mandates if it were not a law firm; that is, to

> pursue **legal, administrative, and other appropriate remedies** or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements, with particular attention to members of ethnic and racial minority groups

42 U.S.C. § 15043 (a)(2)(A)(i); (emphasis added); 42 U.S.C. § 10805(a)(1).

P&As are required to maintain staff sufficient to carry out its duties, like hiring lawyers:

hire and maintain sufficient numbers and types of staff (qualified by training and experience) to carry out such system's functions

42 U.S.C. § 15043(K).

ADAP is counsel for Plaintiffs in this lawsuit, as Defendant well knows. As such, what ADAP does is protected by the same privileges that other law firms enjoy. The work of the attorneys and their communications are protected by the work product doctrine and/or the attorney-client privilege, as previously communicated to Defendant in response to her Interrogatories and Request for Production. (Exhibit 2). Defendant knows ADAP's role as a law firm and seeks what is clearly confidential and privileged. As such, this subpoena must be quashed under Federal Rule of Civil Procedure Rule 45(d)(3)(A)(iii).

### Documents sought by Defendant are not relevant to any issue before this court

The above captioned suit is a claim on behalf of minor children in the care and custody of the Alabama Department of Human Resources. It involves a claim under *Olmstead v. L.C. by Zimring*, 527 U.S. 581, 119 S. Ct. 2176, 144 L.Ed.2d 540 (1999) and Title II of the Americans with Disabilities Act ("ADA"). The case at bar is not a claim for a denial of the youths' 14th Amendment rights to substantiative due process because of any conditions under which they are held in the psychiatric residential treatment facilities (PRTFs) in which Defendant has placed them. Yet, most, if not all of Defendant's requests for documents involve ADAP investigations and monitoring of PRTF conditions. Requests related to ADAP's role in monitoring conditions of the PRTFs and investigating suspected abuse has nothing to do with whether a violation of *Olmstead* has occurred.

### Undue burden

Defendant's requests are overly burdensome seeking documents that she already has in her files and which are unlimited in scope and date. For instance, Request 1 requests essentially all the files and documents related to ADAP's investigations and monitoring activities ever since ADAP was founded. Besides those records being protected from disclosure, as outlined above, to have to respond to these requests would cause undue hardship on this non-profit, federally funded authorized entity with its limited staff numbers. To make the attorneys on this case search files and prepare logs will prevent them from handling other matters pursuant to the agency's mandate to promote the rights, safety, and well-being of Alabama's disabled community.

### Harassment of ADAP

This subpoena seeks information that is already within the knowledge or files of the Defendant and is simply meant to harass ADAP. See, for instance, Request 12 which seeks all Memorandums of Understanding between ADAP and the Alabama Department of Human Resources ("ADHR"). Certainly, any agreement or Memorandum of Understanding between ADAP and Defendant would be in the custody of Defendant, even if such were relevant to this litigation.

Another example is found in Request 3 related to a July 6, 2020 letter expressing concern about the conditions at a PRTF and the physical and emotional abuse to which residents were subjected.

Not only is that letter not relevant to the *Olmstead* claims raised in this case, but this request seeks responses from Defendant and other Alabama state agencies. Defendant, an Alabama state agency, is asking for copies of what other different state agency departments sent to ADAP on matters which have nothing to do with this lawsuit.

Finally, Request 1 seeks all notes, communications, and written and recorded interview statements for the work that ADAP has been doing for what amounts to the entirety of its existence as a P&A. Defendant knows that ADAP is precluded from divulging the contents of such investigations and monitoring actions under federal regulations and that what is requested is either privileged or protected information and spans decades of work by this P&A.

It is interesting to note that Defendant has not sought similar requests from the other law firms representing Plaintiffs in this case. One might infer that Defendant does not like ADAP because of its congressionally mandated authority and seeks to harass ADAP for zealously doing its job.

## Specific Request and the Objections Thereto

Document requests:

1. ADAP's entire investigation file prior to May 20, 2021 related to its investigation and monitoring of ADHR's use and oversight of PRTFs, including but not limited to any notes, communications, and written or recorded interview statement.

This request is essentially the same as that made by Defendant in her Request for Production 9 to Plaintiffs. This request was objected to at that time on a number of grounds that 42 C.F.R. § 51.45 requires this P&A to keep all such material confidential. Further, as we objected to the first time Defendant requested this information, this information was collected at the direction of an attorney or by an attorney, and would be protected by attorney-client privilege, as work product, and/or as made in anticipation of litigation.

2. All documents and communications ADAP reviewed or relied upon in preparing the July 6, 2020 letter from ADAP, Children's Rights, and SPLC to ADHR, the Department of Mental Health (ADMH), the Alabama Department of Public Health (ADPH), and the Alabama Medicaid Agency.

This request is essential the same as made in Defendant's Request for production 10 to Plaintiffs. This agency pointed out that it was not a party to this litigation, rather that ADAP was counsel for Plaintiffs and that such a request was inappropriate under Fed. R. Civ. P. Rule 34.

3. All responses to the July 6, 2020 letter that ADAP received from ADHR, ADMH, ADPH, or the Alabama Medicaid Agency.

Again, this letter has nothing to do with the *Olmstead* claims raised in this lawsuit. Further, it is ADAP's understanding that any communication from any of those agencies, even if relevant to any issue in this case, is already in Defendant's possession.

4. All documents and communications ADAP reviewed or relied upon in preparing its March 19, 2021 letter to ADHR regarding oversight of PRTFs.

The correspondence mentioned was in response to a request from Defendant to offer them suggestions as to how its agency could better monitor the facilities where foster children in their care and custody are placed. It also speaks about how to respond in a timelier manner to serious occurrence reports, which is a mandated reporting requirement of both federal and state regulations when a resident is injured, including as related to any restraint conducted on the resident. Again, this letter relates to conditions found at various PRTFs and a request from Defendant that we thought was in good faith as to how to better monitor the conditions of the institutions in which they place children. It has nothing to do with the allegations central to this suit related to *Olmstead*.

5. All documents and communications ADAP reviewed or relied upon in preparing the April 22, 2021 letter to ADHR from ADAP, Children's Rights, and SPLC regarding ADHR's use of PRTFs.

This correspondence was a final attempt to reach a settlement prior to filing the instant action. It was offered in hopes of remediating the underlying concerns at issue, without having to file suit. Any documents related to this correspondence would be protected by attorney-client privilege, attorney work product, and made in anticipation of litigation.

6. All documents and communications ADAP reviewed or relied upon in preparing the initial Complaint filed on May 20, 2021.

Any documents related to this correspondence would be protected by attorney-client privilege, attorney work product, and that this information was made in anticipation of litigation.

7. All documents and communications prior to May 20, 2021 reflecting, referring, or relating to the Named Plaintiffs.

Defendant is reiterating her request made in her Request for Production to Plaintiffs 7. This was objected to at that time on the basis of attorney-client privilege, attorney work product, and that this information was made in anticipation of litigation.

8. All documents and communications prior to May 20, 2021 between the Next Friends and anyone acting on behalf of ADAP, which reflect, refer, or relate to this lawsuit.

Likewise, Defendant is seeking production of protected documents which were sought in its Request for Production 7 to Plaintiffs. The objections at that time remain – Defendant seeks privileged documents and communications protected by the attorney-client privilege, attorney work product, and/or information protected because it was made in anticipation of litigation.

9. All communications between ADAP and any employee, agent, or representative of a PRTF from January 1, 2019 to the present, including but not limited to any investigation notifications, corrective action pans or notifications, and shut-down requests.

Like the other requests made by Defendant, this is essentially the same as made in her Request for Production 1. At that time, ADAP objected to providing information in that this information was not relevant to any claim before the court and was not designed to lead to discoverable information. Further, such information is protected from disclosure by 42 C.F.R. § 51.45 and also covered by the attorney-client privilege, attorney work product and/or made in anticipation of litigation.

10. Organizational charts for all offices, units, and subdivisions of ADAP, including lists of all positions and the persons occupying each position.

This request is not relevant or calculated to lead to discoverable information on any claim before the court. ADAP is not a party to this lawsuit. Rather, ADAP represents Plaintiffs as one group of their lawyers.

11. All documents reflecting ADAP's policies, procedures, rules, directives and guidelines applicable to the following:
    a. Investigations of abuse and neglect allegations within PRTFs;
    b. Interviews with minor residents of PRTFs, staff members of PRTFs, and other related individuals; and
    c. Confidentiality of records obtain from PRTFs, residents of PRTFs, and individuals who report incidents of abuse and neglect.

This request is identical to the previous Request for Production made by Defendant in Request 11. ADAP's guidelines are codified in the United States Code and the Code of Federal Regulations, as noted, in part, above, and are not relevant to any issue related to the above-captioned lawsuit.

12. All memorandums of understanding (MOUs) and agreements between ADAP and ADHR or any other entity concerning PRTFs.

Any agreement or MOU between the two agencies would already be within the custody and control of Defendant and, moreover, are not relevant to any issue related to the above-captioned lawsuit.

13. All documents and communications between any media source and ADAP, Children's Rights, or SPLC regarding the allegations contended in the First Amended Complaint.

Assuming that there are any such documents, this is simply another example of harassment of ADAP by Defendant. Defendant wants ADAP, as a law firm representing the Plaintiffs, to go to Children's Rights and SPLC, the other two law firms representing the Plaintiffs, and request any documents showing communications with the press. This is not something that ADAP is required to do under Federal Rules. ADAP has no documents generated by it that is responsive to this request.

## Conclusion

ADAP requests that this court quash the subpoena served on it as a nonparty law firm involved representing the Plaintiffs. The material which Defendant seeks from this law firm is privileged and confidential under attorney-client privilege, attorney work product, was prepared in

anticipation of litigation, is required by federal law to be held in strictest confidence or is not relevant or calculated to lead to discoverable information on any claim before the court. To allow access to ADAP's records would totally undermine the federal mandate given to ADAP to have unaccompanied and private meetings with residents and unaccompanied access to facilities that house them. Requiring this release would neuter ADAP's ability to carry out its federally mandated mission and negate the confidence that residents have to tell the truth to ADAP employees: essentially the same reasons that the attorney-client privilege exists in today's jurisprudence. Under Fed. R. Civ. P. Rule 45(d)(3)(A)(iii), this motion must be granted, and the subpoena must be quashed.

Further, Defendant's requests are meant to harass ADAP for doing its job over the decades since its creation, which often has placed it at odds with Defendant. Requests from Defendant include documents which are either publicly available from other state agencies or which she has in her own files. These requests would require significant work to produce, and possibly catalog decades worth of ADAP's work. Such a task for a small, non-profit, federally funded agency, designed to protect and advocate for the disabled with limited staff, would be unduly burdensome. Under Fed. R. Civ. P. Rule 45(d)(3)(A)(iv), this motion must be granted, and the subpoena must be quashed.

Finally, nearly everything that Defendant seeks from ADAP relates to conditions at PRTFs, an issue which has nothing to do with any issue before this court. If the court does find such requests, related to a 14th amendment denial of due process "conditions" claim to be discoverable, ADAP would request, as attorneys for Plaintiffs, additional discovery time and breadth to seek similar discovery from Defendant and additional time to amend their complaint to bring such claims based on abuse, neglect, and unsafe conditions related to the residents of the PRTFs against Defendant.

**Dated: October 12, 2022**

**Respectfully Submitted,**

**ALABAMA DISABILITIES ADVOCACY PROGRAM**

Larry G. Canada  ASB 3153-N73L
Nancy Anderson ASB 3738-R67N
Andrea Mixson ASB 2155-R79M
Attorneys at The Alabama Disabilities Advocacy Program
2008 12th Street
Tuscaloosa, AL 35401
(205)348-4928
lcanada@adap.ua.edu
nanderson@adap.ua.edu
amixson@adap.ua.edu

## Certificate of Service

I hereby certify that on October 12, 2022, I served the foregoing by electronic mail upon the following counsel of Record:

Counsel for Defendant
Alfred F. Smith, Jr.
Jennifer H. Wheeler
Bainbridge, Mims, Rogers & Smith, LLP
600 Luckie Drive, Ste. 415
Birmingham, Alabama 35223
Email: asmith@bainbridgemims.com
jwheeler@bainbridgemims.com

Felicia M. Brooks
Jonathan S. Schlenker
Joshua J. Lane
State of Alabama
Department of Human Resources
Legal Office
P.O. Box 304000
Montgomery, AL 36130-4000
Email: felicia.brooks@dhr.alabama.gov
Jonathan.schlenker@dhr.alabama.gov
Joshua.lane@dhr.alabama.gov

Counsel for Plaintiffs – Southern Poverty Law Center
Ms. Claire Sherburne
Mr. Michael J. Tafelski
Ms. Sophia Mire Hill
403 Washington Ave.
Montgomery, AL 36104
Email: claire.sherburne@splcenter.org
Michael.tafelski@splcenter.org
Sophia.mire@splcenter.org

Counsel for Plaintiffs – Children's Rights
Mr. Aaron Finch
Ms. Lindsey Frye
88 pine Street Suite 800
New York, New York 10005
Email: afinch@childrensrights.org
lfrey@childrensrights.org

Larry G. Canada
Alabama Disabilities Advocacy Program