**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **C.C.**, *et al.*, | |
| **Plaintiffs,** | **Civil Action No.:** 2:21-CV-367-ECM |
| v. | |
| **NANCY T. BUCKNER**, Commissioner of the Alabama Department of Human Resources, in her official capacity, | |
| **Defendant.** | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF
FORM AND MANNER OF CLASS NOTICE WITH INCORPORATED
MEMORANDUM OF LAW IN SUPPORT**

**I.    Introduction**

The Parties have reached a comprehensive settlement resolving all claims in this statewide class action lawsuit. The Settlement Agreement (or "Agreement"), attached hereto as Exhibit 1, is the result of almost a full year of careful drafting and direct negotiations between the Parties, and mediation before the Honorable Magistrate Judge Chad Bryan.

The Parties hereby jointly move the Court to enter an order: (i) granting preliminary approval of the Settlement Agreement, (ii) certifying the putative Class and appointing Class Counsel, (iii) setting a hearing for final approval of the Settlement Agreement, (iv) authorizing the form and manner of the Notice of the Class Action Settlement (Exhibit 2), and (v) authorizing the Parties to direct notice to the putative Class to initiate the final settlement approval process, including an opportunity for stakeholders to raise any objections.

1

## II.      Summary of the Litigation

Plaintiffs filed this statewide class action lawsuit on May 20, 2021, alleging violations of

the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. Plaintiffs

sought declaratory and injunctive relief relating to the alleged unnecessary institutionalization of

children in foster care for purposes of accessing mental health treatment and the inadequate

provision of community-based placements and services to these children. Compl., ECF No. 1.

The Defendant in this case is the Commissioner of the Alabama Department of Human

Resources ("ADHR"), Nancy Buckner, in her official capacity. Plaintiffs alleged that the original

Named Plaintiffs, proceeding under pseudonymous initials A.A., B.B., C.C., and D.D. were, at

the time of filing, children in the custody of ADHR who had a mental health impairment

substantially limiting one or more major life activities, and who were placed in or at risk of

placement in a Psychiatric Residential Treatment Facility ("PRTF"), despite presenting mental

health issues that are treatable in community-based placements. Plaintiffs alleged in their

complaint that PRTFs are segregated settings that separate their minor residents from the

community, such that the unnecessary placement of disabled children in PRTFs violates the

ADA as interpreted by *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600 (1999). During the

course of the litigation, additional Named Plaintiffs E.E., F.F., and G.G. were added; Named

Plaintiff D.D. withdrew; and Named Plaintiffs A.A., B.B., and E.E. were voluntarily dismissed

because they had exited ADHR custody.[1] This Court appointed Next Friends for all of the minor

Named Plaintiffs. Orders Approving Next Friends, ECF Nos. 43, 45, 57, 89, 96.

Prior to reaching settlement, the Parties engaged in extensive litigation and discovery.

Beginning in 2021, ADHR filed a motion to dismiss, which Plaintiffs opposed. This Court

---

[1] First Am. Compl. ("FAC"), ECF No. 46; Second Am. Compl. ("SAC"), ECF No. 92; Orders Granting Mot. to Withdraw as Pls., ECF No. 120 (D.D.), ECF No. 130 (A.A., B.B., and C.C.).

granted the motion and provided Plaintiffs leave to file an amended complaint.[2] Plaintiffs filed

their Amended Complaint on November 19, 2021. FAC.[3] The Parties thereafter proceeded to the

discovery phase. They submitted a scheduling order that was approved and entered by this Court,

stipulated to a protective order preserving confidentiality in relation to individually identifying

information, and prepared a protocol regarding non-party records.[4] The Parties further litigated

several discovery disputes.[5]

In the course of discovery, ADHR produced nearly three million pages of documents and

the Parties collectively disclosed a total of ten experts and conducted depositions of thirty-two

witnesses, including experts, 30(b)(6) designees, and fact witnesses. *See* Ex. 3, Decl. of Lindsey

Frye ("Frye Decl.") ¶ 11. The Parties also requested, and the Court granted, a stay of the

litigation for sixty days in December 2022 to engage in direct settlement negotiations, which

were unsuccessful. Joint Mot. Stay Disc. & Extend Deadlines, ECF No. 86; Second Am.

Scheduling Order, ECF No. 87; *see* Frye Decl. ¶ 11. The Parties also timely exchanged extensive

expert reports and underlying reliance materials under Fed. R. Civ. P. 26. *Id*.

Plaintiffs filed their Motion for Class Certification on March 8, 2024, requesting

certification of a class defined as: "Children who are adjudicated dependent under Ala. Code

§ 12-15-314(a)(3), and who have, or have a record of, a mental health impairment that

substantially limits one or more major life activities." Pls.' Mot. Class Cert., ECF No. 124.

---

[2] Def.'s Mot. to Dismiss, ECF No. 23; Pls' Opp'n to MTD, ECF No. 31; Op. ("MTD and Next Friend Op."), ECF No. 43.
[3] Prior to moving for class certification, Plaintiffs filed a Second Amended Complaint on May 8, 2023, adding additional Named Plaintiffs. SAC at ¶¶ 112–45.
[4] Joint Report 26(f) Conference, ECF No. 58; Order Mot. Bifurcate Disc., ECF No. 64; Sched. Order, ECF No. 65; Order Granting Joint Protective Order, ECF No. 66; Order Granting Joint Mot. (Non-Party Records), ECF No. 71.
[5] Def.'s Mot. Bifurcate Disc., ECF No. 59; Pls.' Resp. Bifurcate Disc., ECF No. 61; Order Mot. Bifurcate Disc., ECF No. 64; Order Mot. to Quash, ECF No. 83; Def.'s Mot. Extend Deadlines, ECF No. 127; Def.'s Mot. to Stay, ECF No. 133; Pls.' Opp'n to Mots. to Extend Deadlines and Stay, ECF No. 135; Am. Scheduling Order, ECF No. 136; Def. Mot. for Protective Order, ECF No. 170.

ADHR opposed the motion. Def.'s Opp'n to Class Cert., ECF No. 145. While the class certification motion was pending and discovery was drawing to a close, the Parties conducted a series of mediation sessions with Magistrate Judge Bryan between August 2024 and March 2025. Joint Cert. Regarding Mediation, ECF No. 149; Joint Status Reports, ECF Nos. 153, 156, 161. This Court subsequently ordered the Parties to re-file the class certification motion and briefing and set a new schedule for the case, with a trial date of April 2026. Order, ECF No. 163; Order, ECF No. 166; Uniform Scheduling Order, ECF No. 167. Plaintiffs filed their Renewed Motion for Class Certification, with the same class definition as the original motion, on April 30, 2025, and ADHR opposed the motion. Pls.' Renewed Mot. for Class Cert., ECF No. 168; Def.'s Opp'n to Class Cert., ECF No. 169. During this time, the Parties continued settlement negotiations amongst themselves, and on September 29, 2025, filed a Joint Status Report indicating that they had reached agreement in principle resolving all claims in this litigation. ECF No. 175; Frye Decl. ¶ 16.

Throughout this litigation, Plaintiffs have been represented by attorneys from Children's Rights, the Southern Poverty Law Center ("SPLC"), and the Alabama Disabilities Advocacy Program ("ADAP") (collectively, "Class Counsel"). Class Counsel individually and collectively have extensive experience litigating class action, foster care, and youth disability cases. *See* Frye Decl. ¶¶ 3-5, 7-9; Ex. 4, Decl. of Claire Sherburne ("Sherburne Decl.") ¶¶ 4, 6; Ex. 5, Decl. of Larry Canada ("Canada Decl.") ¶¶ 3-8. This considerable experience was applied in negotiating a resolution of Plaintiffs' claims. The resulting Settlement Agreement provides substantial benefits to the Class while removing the delay, risk, and expense inherent to a complex trial. If the proposed settlement is approved by the Court, Class Counsel will continue to represent Plaintiffs for purposes of enforcement.

### III.    Summary of the Settlement Agreement

The Parties reached their final Settlement Agreement on December 18, 2025. The Settlement Agreement resolves all claims against ADHR brought by Plaintiffs on behalf of the proposed settlement class.[6] It sets forth commitments undertaken by ADHR to amicably resolve the pending claims, with this Court retaining jurisdiction for purposes of enforcing the terms of the Settlement Agreement and determining the amount of reasonable fees and costs. Ex. 1, Settlement Agreement § III.2.[7] While both Plaintiffs and ADHR believe in their ability to succeed at a trial on the merits, both sides recognize the risks, burdens, and uncertainties inherent to litigation.

Significantly, the Settlement Agreement confirms that the Parties share an essential goal: ensuring that all children in foster care in Alabama are placed in the least restrictive, most integrated setting appropriate to meet their needs by timely assessing and documenting children's behavioral health needs both before and during any placement in a PRTF. As a result, the Settlement Agreement fully addresses—in a detailed and specific manner—the alleged issues raised in the Plaintiffs' Second Amended Complaint. The Parties agree the Settlement Agreement is of significant benefit to the putative Class and represents a fair, reasonable, and adequate solution to Class Members' claims. Frye Decl. ¶ 18; Sherburne Decl. ¶ 10; Canada Decl. ¶ 13. The Parties also agree the Settlement Agreement is in the best interests of all Class Members as it allows the Class Members to experience the substantial benefits of the Settlement as soon as possible and to avoid the risk of delayed relief and the uncertainty of litigation. Frye

---

[6] The Settlement Agreement proposes the same class definition as Plaintiffs' motion and renewed motion for class certification.

[7] Unless otherwise indicated, all citations in Section III are to the Settlement Agreement.

Decl. ¶ 19; Sherburne Decl. ¶ 9-10; Canada Decl. ¶ 14. The commitments in the Settlement Agreement are summarized below.

### A. Assessments

The Settlement Agreement requires ADHR to do the following regarding its assessments of children in foster care:

- Ensure that no child is referred to a PRTF without first receiving a Comprehensive Assessment, defined in the Agreement, no earlier than 30 days prior to a child's referral to a PRTF (§§ II.A.1–2);

- Reassess all children in PRTFs at intervals not to exceed 6 months to determine the appropriateness of a less restrictive placement (§ II.A.4);

- Update its ISP policy to require that for any children in a PRTF placement and for any child who has been discharged from a PRTF within the last 6 months, the ISP Team will meet no less frequently than every 3 months (§ II.A.5); and

- Step down children who receive a stepdown recommendation to the least restrictive placement within 30 to 45 days of the recommendation (§ II.A.6).

Substantial compliance with these requirements will be determined through a series of Outcome Measures negotiated by the Parties via regular reporting to ADAP. §§ II.A.7–9.

### B. ISP and Discharge Planning

The Settlement Agreement requires ADHR to do the following regarding ISP Planning and Discharge Planning provided to children in foster care:

- Create a PRTF Form for all Class Members referred to PRTFs containing the elements listed in the Settlement Agreement, including a Treatment Progress Summary, prior to a child's placement in a PRTF and updated with the child's ISP (§ II.B.1(i));

- Monitor the PRTF Treatment Plan for all Class Members in PRTFs, and include the information contained in the Settlement Agreement in the Treatment Progress Summary, which will also be reviewed at every ISP meeting while the child is in a PRTF (§§ II.B.1(ii–iii));

- Ensure that discharge planning begins upon a child's admission to a PRTF; monitor the discharge plan; maintain the information contained in the Agreement in the discharge plan; review the discharge plan at every ISP meeting while the child is in the PRTF and at the first ISP meeting after the child has been discharged from the PRTF (§§ II.B.2(i–iii));

- Ensure that a child's discharge date is not extended based on point or level systems used by the PRTF (§ II.B.2(iv));

- Ensure that a child's discharge date is extended only upon a written finding by the child's Treatment Team or ISP Team finding that the child's needs justify a lengthier stay than previously anticipated, and documented in accordance with the terms of the Settlement Agreement (§§ II.B.2(iv–v)); and

- Conduct additional trainings of ADHR case workers and supervisors regarding the new case planning and discharge planning processes (§ II.B.3).

ADHR's compliance with this section of the Agreement will be measured via a quality assurance initiative at ADHR, which will conduct a bi-annual review of a random sample of children who have been placed in PRTFs and who have been discharged from a PRTF in the past 12 months. The review will verify that each of the files contains the information outlined in the Settlement Agreement and will rate each file being either a "Strength" or "Area Needing Improvement." ADHR will report the findings of the review to ADAP. This section of the Settlement Agreement

also contains an outcome measure related to the number of Class Members placed in congregate settings. Substantial compliance with the Settlement Agreement requires ADHR to meet the outcome threshold negotiated by the Parties, pursuant to the terms of the Agreement. §§ II.B.4–6.

### C. Structural Terms

The Parties have agreed that upon the Court's final approval of this Agreement, the Parties will file a joint stipulation and dismissal with prejudice of this action, and request that in dismissing the action, the Court retain jurisdiction to enforce the terms of the Agreement and determine the amount of reasonable fees and costs to which Plaintiffs are entitled. § III.2; *see American Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320–21 (11th Cir. 2002). The Parties have also agreed to certification of a settlement class as defined in Plaintiffs' renewed motion for class certification. § III.3.

To determine ADHR's compliance with the Agreement, the Parties have agreed that ADAP will serve as a data validator. This role will include receiving, analyzing, and validating performance data supplied by ADHR. ADAP will issue a report to the Parties on ADHR's performance each 6-month reporting period. The Parties will have 21 days to respond to each status report, and any objections not raised within 21 days will be deemed waived in any future proceedings regarding enforcement or extension of the Agreement. The Parties agree to work in good faith to resolve any objections or disputes raised in response to a status report. § III.4, 6–7. Throughout the term of the Agreement, ADHR will provide a set of baseline data in addition to reporting on each of the outcome measures. § III.5. ADAP retains the right to seek court involvement if substantial inaccuracies in the reporting data are found or if ADHR does not provide data requested by ADAP. § III.6.

Some of the outcome measures in the Agreement have Interim Benchmarks that will be used to measure progress made by ADHR in seeking to meet the performance standard on each outcome measure. Plaintiffs have agreed to not seek enforcement action on an outcome measure unless ADHR's aggregate performance as reported by ADAP is below the applicable Interim Benchmark. § III.9. Moreover, Plaintiffs may not seek federal court enforcement on any Interim Benchmark or outcome measure unless the Parties have first attempted to resolve the dispute through direct negotiation and ADHR's aggregate performance has failed to meet the Interim Benchmark or outcome measure for two consecutive reporting periods. § III.11. If Plaintiffs do seek court involvement, the Court will apply due deference to ADAP's findings when determining appropriate relief. § III.11.

The Agreement will terminate 36 months from the Implementation Date, which will be 6 months from the date the Court enters an order dismissing this case and retaining jurisdiction to enforce the terms of the Agreement and determine the amount of reasonable fees and costs. § III.12. If at the end of the 36-month term, Plaintiffs do not agree that ADHR has materially and substantially complied with the Agreement, they may petition the Court to extend the term with regard to the non-compliant outcome measures. § III.12. If, during the term of the Agreement, ADHR achieves material and substantial compliance with any individual outcome measure prior to the end of the term of the Agreement, ADHR will be deemed to have satisfied that outcome measure and will be released from its reporting obligation on that outcome measure. § III.13.

Finally, during the term of the Agreement, ADHR is released from any future class action by the Plaintiff Class and from any and all claims by any class member alleging a Title II of the ADA or Section 504 of the RA cause of action for declaratory or prospective injunctive relief or

any other equitable relief concerning or relating to ADHR's placement of children in foster care with mental health disabilities in a PRTF for treatment. § III.17.

The Parties agree that Plaintiffs are the prevailing party for the matters addressed by the Settlement Agreement, and, as such, are entitled to a reasonable payment for fees and costs. Plaintiffs maintained contemporaneous billing records to support their fee demand and exercised significant billing judgment when calculating their fee demand. The Parties negotiated the fee award after the Parties had resolved the other substantive terms of the Settlement Agreement. ADHR has agreed to pay Plaintiffs $3 million in attorneys' fees and $400,000 in costs.

## IV. The Court Should Preliminarily Approve the Settlement Agreement and Awarded Attorneys' Fees and Costs in the Amount Agreed Upon in the Settlement Agreement

### A. Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure states that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A court may approve a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering the factors outlined in Rule 23(e)(2). *See id.*; *see also In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2024 WL 4982979, at *12 (N.D. Ala. Dec. 4, 2024). In addition to the elements of Rule 23(e)(2), when deciding whether a settlement is fair, reasonable, and adequate, a court can, where appropriate, consider the factors enumerated in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). *See Ponzio v. Pinon*, 87 F.4th 487, 494–95 (11th Cir. 2023) (finding the *Bennett* factors applicable after the 2018 amendment to Rule 23(e)(2)); *Singleton v. Taylor*, No. 2:20-CV-99-WKW, 2022 WL 4357451 at *1 (M.D. Ala. Sept. 20, 2022) (citing *Bennett*, 737 F.2d at 986).

Rule 23(e)(2)'s elements are as follows:

> (A) the class representatives and class counsel have adequately represented the class; (B) the [settlement] proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the [settlement] proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors are the court's "primary considerations" when evaluating proposed settlements; the *Bennett* factors complement and inform the Rule 23(e)(2) factors. *Ponzio*, 87 F.4th at 494. The *Bennett* factors are as follows:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (quotations omitted) (quoting *Bennett*, 737 F.2d at 986). "*Bennett* factors (1), (2), (4), and (6) can inform 'whether the relief provided to the class is adequate[,]'" which is the core concern of Rule 23(e)(2)(C). *Ponzio*, 87 F.4th at 494. "And *Bennett* factors (3) and (5) can inform 'whether the proposal treats class members equitably relative to each other[,]'" which is the core concern of Rule 23(e)(2)(D). *Id.*; *see also Marcrum v. Hobby Lobby Stores, Inc.*, No. 2:18-CV-01645-JHE, 2021 WL 3710133, at *3 (N.D. Ala. Aug. 20, 2021) ("Many [of the *Bennett* factors] bear on the third Rule 23(e)(2) requirement."); *Pettway v. R. L. Zigler Co., Inc*., 7:23-CV-00047-LSC, 2024 WL 3656750, at *7–10 (N.D. Ala. Aug. 2, 2024) (folding the analysis of the *Bennett* factors into the Rule 23(e)(2) factors). As will be shown below, the proposed Settlement Agreement meets each of the Rule 23(e)(2) and *Bennett* factors and should therefore be approved by this Court.

"Judicial review of a proposed class action settlement via application of Rule 23(e)(2) and the *Bennett* factors "is a two-step process: preliminary approval hearing and a subsequent

fairness hearing [for purposes of final approval]." *Dalton v. Cardworks Servicing, LLC*, No. CA 09-00563-CB-C, 2010 WL 5341939, at *2 (S.D. Ala. Nov. 19, 2010), *report and recommendation adopted*, No. CA 09-0563-CB-C, 2010 WL 5331724 (S.D. Ala. Dec. 21, 2010). At the preliminary approval stage, the "Court's initial task is to make a 'preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class.'" *Id.* at *2. At this stage, the "court need not make a *final* determination of the fairness, reasonableness, and adequacy of the proposed settlement" but instead the court must make "a *preliminary* finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the class members." *In re Blue Cross*, 2024 WL 4982979, at *18 (emphases added). When considering the relevant factors, "the crux of a court's preliminary approval evaluation is whether 'giving notice to the class is justified by the parties' showing that the court will *likely* be able to" give final approval to the proposed settlement and certify the settlement class. *Arnold v. State Farm Fire & Cas. Co*., No. 2:17-CV-148-TFM-C, 2022 WL 4290756, at *2 (S.D. Ala. Apr. 25, 2022) (emphasis added); *see also Fam. Med. Pharmacy, LLC v. Holdings*, No. CV 15-0563-WS-C, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016) ("During the preliminary approval process, the court simply determines whether the proposed settlement falls within the range of possible approval.") (quotations omitted).

In addition, evaluations of the approval of a settlement agreement should be made considering the "strong judicial policy favoring settlement." *In re Equifax*, 999 F.3d at 1273. "Federal courts have long recognized a strong presumption in favor of class action settlements" because "substantial resources can be conserved by avoiding lengthy trials and appeals." *Chambers v. Groome Transp. of Ala., Inc*., No. 3:14CV237-CSC (WO), 2015 WL 9255332, at *2 (M.D. Ala. Dec. 17, 2015); *Ponzio*, 87 F.4th at 494. Once a Court preliminarily approves a

settlement, it directs counsel for plaintiffs to give notice to class members and sets a date for the final hearing. *See Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-cv-100-J-39JBT, 2019 WL 11093815, at *7 (M.D. Fla. Apr. 4, 2019).

### B.  The Court Should Preliminarily Approve the Settlement Agreement

The Parties' Settlement Agreement in this case is fair, adequate, and reasonable. It meets each of the Rule 23(e)(2) factors and *Bennett* factors, and the Court ultimately will be able to give final approval to the proposed settlement. The Court should therefore grant preliminary approval of the Settlement Agreement and direct notice to the Class based on the below findings:

> *i.    The class representatives and Plaintiffs' counsel have adequately represented the class.*

First, the class representatives and Plaintiffs' counsel have adequately represented the proposed class.[8] Fed. R. Civ. P. 23(e)(2)(A). As stated above, Plaintiffs are represented by Children's Rights, ADAP, and the SPLC. Each organization has extensive experience litigating and monitoring complex, federal class action lawsuits and settlements arising under Rule 23(b)(2), including cases on behalf of foster care children and children with disabilities. *See* Frye Decl. ¶¶ 3-4, 7-9; Sherburne Decl. ¶¶ 4-6; Canada Decl. ¶¶ 4-8. Plaintiffs' counsel has been vigorously advocating on behalf of the class for over four years. As explained above, the Parties engaged in lengthy motions practice and fact and expert discovery. *See supra* Section II; *see also* Scheduling Orders, ECF Nos. 65, 73; Def.'s Reply in Supp. Mot. for Protective Order, ECF No. 174. Plaintiffs' counsel will continue to vigorously represent the proposed class throughout the remainder of this litigation. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024) (finding the class was

---

[8] In their motion and renewed motion for class certification, Plaintiffs' counsel requested to be appointed Class Counsel, which was unopposed by ADHR. Pls.' Mot. for Class Cert., ECF No. 124; Pls.' Renewed Mot. for Class Cert., ECF No. 168.

adequately represented when class counsel conducted extensive discovery, including investigating the facts and legal claims, exchanging expert reports, and taking expert depositions); *In re Blue Cross*, 2024 WL 4982979, at *18 (preliminarily finding the class was "adequately represented" because "Settlement Class Counsel have vigorously, professionally, and successfully represented the interests of the Settlement Class for the last twelve years in both hard-fought litigation and intense settlement negotiations[]").

Further, for the reasons discussed *infra* V.D, the class representatives have adequately represented the class under Rule 23(e)(2)(A). The Named Plaintiffs' interests directly align with the interests of the putative Class. *See id.* at *15–16, 18. Each Named Plaintiff expressed their willingness and ability to actively participate in the litigation and to protect the interests of the class. Decl. of Named Pl. C.C. ¶ 5, ECF No. 124-6; Decl. of Named Pl. F.F. ¶ 6, ECF No. 124-7; Decl. of Named Pl. G.G. ¶ 5, ECF No. 124-8. The Named Plaintiffs and all putative Class members have interests in improving access to integrated, community-based placements, assessment practices, and ISP practices, and the benefit of the settlement will apply to the Named Plaintiffs and class members equally.

ii.    *The settlement proposal was negotiated at arm's length.*

Second, the Settlement Agreement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The Settlement Agreement was negotiated over the course of a year, partly with the help of a federal magistrate judge, and "[t]here is a presumption of good faith in the negotiation process." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). Courts have found settlements to be negotiated at arm's length when, like here, there have been multiple mediation sessions between counsel and a neutral third-party mediator. *See McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *9 (N.D. Ala.

Aug. 1, 2019) (noting the involvement of an experienced mediator in discussion of factors showing that a settlement was not the result of collusion); *In re Mednax Servs., Inc.*, 2024 WL 1554329, at *6 ("The [s]ettlement is the result of intensive, arm's-length negotiations through a neutral third-party mediator, and between experienced attorneys . . . .").

The Parties first engaged in arm's length negotiations over the substance of a potential settlement agreement in December 2022. *See supra* Section II. Then, beginning in May 2024, the Parties revisited negotiations and requested mediation with a magistrate judge. *See* Joint Status Report Rep. Mediation, ECF No. 140; Order for Mediation, ECF No. 142. The Parties participated in eight judicial settlement conferences with Judge Chad Bryan's involvement. The Parties continued direct negotiations without Judge Bryan from March to September 2025, including several all-day, in-person sessions. *See supra* Section II. On September 29, 2025, the Parties submitted a joint status report indicating that the Parties had reached an agreement in principal. Joint Status Report, ECF No. 175. Additionally, the significant hours the Parties have spent litigating this case through discovery, including submitting contested class certification filings and other motions indicate there was no collusion or improper conduct when reaching the proposed settlement. *See Camp v. City of Pelham*, No. 2:10-cv-01270-MHH, 2014 WL 1764919, at *5 (N.D. Ala. May 1, 2014).

> *iii. The relief provided for the class is adequate.*

Third, the relief provided for the class is adequate, taking into account the elements listed in Fed. R. Civ. P. 23(e)(2)(C), and the following *Bennett* factors: the complexity, expense, and duration of litigation; the likelihood of success at trial; the range of possible recovery; and the stage of proceedings at which the settlement was achieved.[9] *See Ponzio,* 87 F.4th at 494.

___

[9] Fed. R. Civ. P. 23(e)(2)(C)(ii) is met because the relief will be distributed through the changes in ADHR's policies and practices that will affect the entire class the same way, and there are no class member claims to process. Fed. R.

Settlement in this case is favored because, as a statewide class action suit, this case is and would be highly complex, expensive, and time consuming if it were to proceed to the summary judgment phase and trial. *See Bennett*, 737 F.2d at 986 (factor 4); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement. It is common knowledge that class action suits have a well deserved reputation as being most complex.") (internal citations omitted); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. Mar. 22, 1993) (finding that the review of over one million pages of documents indicates that "preparation for trial would be time consuming, complex and expensive"). The Parties will also save substantial resources by resolving this case without a trial.

The terms of the proposed award of the attorneys' fees also weigh in favor of approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As stated above, the Parties agreed on an attorneys' fees award of $ 3 million and cost award of $400,000. § III.18. The Parties agree that the fees settlement is a fair, reasonable, and adequate resolution of Plaintiffs' claim for attorneys' fees and stipulate that the agreement as to fees, just like the rest of the Agreement, is the product of arm's length negotiation between their respective counsel. Frye Decl. ¶ 22; Sherburne Decl. ¶¶ 12-13; Canada Decl. ¶ 17. Plaintiffs calculated their fees in this case by multiplying the number of hours reasonably expended on this litigation, based on their contemporaneous billing records, by a reasonable hourly rate. Frye Decl. ¶ 23; Sherburne Decl. ¶¶ 14-15; Canada Decl. ¶ 18. Plaintiffs used comparable rates charged by private attorneys of similar experience working in the Alabama legal market. Frye Decl. ¶ 23; Sherburne Decl. ¶¶ 14-15; Canada Decl. ¶ 18. Plaintiffs also ensured efficiency and avoided duplicative efforts and billing among co-counsel

---

Civ. P. 23(e)(2)(C)(iv) is met because the Settlement Agreement is the only agreement between the Parties and there are no additional agreements required to be identified or considered under Rule 23(e)(3).

through this litigation and made diligent efforts to keep costs and expenses to a minimum. Frye Decl. ¶¶ 24-26; Sherburne Decl. ¶¶ 16-17; Canada Decl. ¶ 19-21. The Eleventh Circuit has held that a reasonable hourly fee is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar for the work of Plaintiffs' counsel up to the time of the Settlement Agreement is over $ 3.7 million. Frye Decl. ¶ 22; Sherburne Decl. ¶ 12; Canada Decl. ¶ 17. In light of this lodestar amount, the agreed-upon amount of $ 3 million is clearly reasonable and should be approved by the Court.

While both Parties are confident of their ability to litigate this case through trial, the likelihood of success for either side is ultimately unpredictable, and class certification remains unresolved. *See Bennett*, 737 F.2d at 986 (factor 1); *Swaney v. Regions Bank*, No. 2:13-CV-00544-RDP, 2020 WL 3064945, at *3–4 (N.D. Ala. June 9, 2020) (finding factor weighed in favor of approving settlement since the outcome of class certification and the ultimate outcome on the merits were uncertain); *Marcrum,* 2021 WL 3710133, at *3 (finding that without class certification there is no guarantee that plaintiffs would succeed on their claims).

Further, when compared "with the likely rewards that the class would have received following a successful trial of the case," the proposed relief is not only within the range of possible recovery, but it is substantially similar to what Plaintiffs could achieve after a successful verdict at trial. *Knight v. Alabama*, 469 F. Supp. 2d 1016, 1034 (N.D. Ala. 2006) (quoting *Cotton*, 559 F.2d at 1330) (quotations omitted); *see also Bennett*, 737 F.2d at 986 (factor 2). The scope of the Settlement Agreement addresses Plaintiffs' allegations. The Parties agree that the practice and policy changes contained in the Settlement Agreement further their shared goal of

placing foster children in the least restrictive, most integrated setting appropriate to meet their needs.

The stage of proceedings at which this case was settled also favors approval of the Settlement Agreement. *Bennett*, 737 F.2d at 986 (factor 6). This case proceeded through over four years of litigation, which included pleadings, class certification briefings, expert reports, depositions, and extensive written discovery. There has been ample opportunity for both sides to investigate and consider substantive evidence relating to claims and defenses. This shows that settlement is appropriate and not premature, and supported by the facts in this case that can be proven at trial. *See Swaney*, 2020 WL 3064945, at *5.

       *iv.    The settlement proposal treats class members equitably relative to each other.*

Fourth, because this case has proceeded consistent with Rule 23(b)(2) with Plaintiffs seeking common injunctive and declaratory relief, the settlement "treats each class member equitably relative to each other." *Davis v. Mar-Jac Poultry, LLC*, No. 6:18-CV-1433-LSC, 2024 WL 3731581, at *2 n.3 (N.D. Ala. Aug. 8, 2024); FRCP 23(e)(2)(D). The policy and procedural changes contained in the Settlement Agreement will apply to and equally benefit all class members. *See M.D. v. Centene Corp., Inc.*, No. 1:18-cv-22372-JB, 2020 WL 7585033, at * 7 (S.D. Fla. Oct. 7, 2020); *Gumm v. Ford*, No. 5:15-CV-41-MTT, 2019 WL 479506, at *7 (M.D. Ga. Jan. 17, 2019). And as to the final *Bennett* factor, there is currently no opposition to the Settlement Agreement, and there will be adequate time for affected class members and members of the community to raise objections. *See Pettway*, 2024 WL 3656750, at *9 (finding this factor weighs in favor of preliminary approval as no objections have yet been raised).

Therefore, because each element of Rule 23(e) and the accompanying *Bennett* factors have been met, the Court should grant preliminary approval of the Settlement Agreement.

V.       **The Court Should Provisionally Certify the Plaintiff Class and Appoint Plaintiffs' Counsel as Class Counsel**

When presented with a settlement agreement that contemplates the certification of a settlement class, the Court must consider whether Rule 23's class certification standards are met, in the same way it would evaluate a class for trial. *See Williams v. Nat'l. Sec. Ins. Co.*, 237 F.R.D. 685, 691–92 (M.D. Ala. 2006) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Here, the putative Class definition is the same as set forth in Plaintiffs' motion and renewed motion for class certification: all children who are adjudicated dependent under Ala. Code § 12-15-314(a)(3), and who have, or have a record of, a mental health impairment that substantially limits one or more major life activities." Settlement Agreement § III.3; *see also* Mem. Pls.' Renewed Mot. Class. Cert. 2, ECF No. 168-1. Accordingly, the Court must consider whether the putative class meets the prerequisites of Rule 23(a): (1) "the class is so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, the class must satisfy one of the requirements of Rule 23(b), here, Rule 23(b)(2): that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For the reasons set forth below, certification of a settlement class is warranted here, as mutually sought by the Parties, for purposes of consummating and implementing a comprehensive resolution of Plaintiffs' claims.

A.       **Plaintiffs Satisfy the Numerosity Requirement**

The putative Class meets the numerosity requirement of Rule 23(a), which requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The burden imposed by Rule 23(a)(1) is a low one. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). Classes with more than forty members are generally deemed large enough to warrant certification. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also Braggs v. Dunn*, 317 F.R.D. 634, 653 (M.D. Ala. 2016). Other factors that make joinder impracticable are also relevant to a numerosity analysis, including geographic diversity, the nature of the action, the inconvenience of trying individual lawsuits, the ability of class members to initiate those lawsuits, and judicial economy. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla. 1996). "[T]he fluid nature of a plaintiff class . . . counsels in favor of certification of all present and future [class] members." *See Braggs*, 317 F.R.D. at 653 (quoting *Henderson v. Thomas*, 289 F.R.D. 506, 510 (M.D. Ala. 2012)).

The proposed class here consists of far more than 40 class members. While the precise size of Plaintiffs' proposed class is unknown, the Parties agree that over 200 children were placed in a PRTF at the end of each fiscal year between 2019 and 2024. *See* ECF No. 169 at 4; *see also* ECF No. 124-11. Because a mental health impairment is a condition for admission into a PRTF, the children placed in a PRTF qualify as class members. Plaintiffs' proposed class also includes additional children with mental health impairments whom Plaintiffs allege are at risk of unnecessary placement in a PRTF and therefore subject to ADHR's policies and practices. The proposed class far exceeds the forty-person threshold.

Other characteristics of the class demonstrate the impracticability of joinder of individual plaintiffs. For one, the putative Class is fluid due to the inherently transitory nature of children in state custody. Children in foster care often move in and out of ADHR's legal and physical

custody, receive different and changing levels of placements within ADHR's foster care continuum, and ultimately age out of ADHR custody when they are no longer minors. This reality raises standing and mootness concerns in relation to claims brought by individual plaintiffs alone. Additionally, the putative Class is comprised of children in state custody, many of whom do not possess the resources to initiate lawsuits on their own. These factors make joinder of all impacted children impracticable, and judicial economy would be served by certifying the putative settlement class.

**B.    Plaintiffs Satisfy the Commonality Requirement**

The putative Class meets the commonality requirement because the members share "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when plaintiffs put forth a "common contention" that "is capable of classwide resolution" such "that determination of its truth or falsity will resolve an issue . . . in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Putative classes seeking injunctive or declaratory relief from a government agency often satisfy commonality by raising questions about the legality of government policies or practices. *See Wyatt B. v. Kate Brown*, No. 6:19-CV-00556-AA, 2022 WL 3445767, at *24 (D. Or. Aug. 17, 2022) ("[W]hen class members seek to enjoin state defendants from violating their rights through statewide policies and practices . . . commonality exists because the statewide policies and procedures are the 'glue' that holds the class together . . . .") (citations and quotation marks omitted).

Factual differences among class members do not defeat commonality where, as here, the same alleged policies apply equally to plaintiff class members. *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 82 (D.D.C. 2015) ("A class may satisfy the commonality requirement even if factual distinctions exist among the claims of putative class members.");

*Meza ex rel. Hernandez v. Marstiller*, No. 3:22-cv-783-MMH-LLL, 2023 WL 2648180, at *9–10 (M.D. Fla. Mar. 27, 2023) (holding that a policy—excluding incontinence supplies from Medicaid coverage—"is a common question capable of class-wide resolution" even though "the ramifications" from the lack of coverage may differ amongst class members).

Rule 23(a)(2)'s commonality requirement is met here because the entire class is subject to ADHR's practices, policies, and procedures with respect to assessments, placements and services, case planning, and discharge planning. The alleged injuries to the putative Class members all result from these same policies and practices. And the resolution of Plaintiffs' claims under the ADA and Section 504 depends on the answers to common questions of law and fact. *See Braggs*, 317 F.R.D. at 642 (finding commonality met when incarcerated plaintiffs alleging inadequate mental health treatment and being involuntary medicated offered evidence of "very concrete" policies and practices about intake screenings and segregation, *id.* at 657).

At least three common issues of fact are raised here. The first is whether ADHR's policy and practice surrounding comprehensive assessments, specifically the failure to require a "comprehensive assessment" before placing a child in an intensive residential setting, caused unnecessary institutionalization of children with mental health impairments. *See* Mem. Pls.' Renewed Mot. Class Cert. 28–29. A second common question is whether a lack of available community-based placements caused unnecessary placements of children with mental health impairments in institutionalized settings. *See id.* at 29–31. A third common question is whether ADHR's allegedly improper case planning for children in foster care with mental health impairments caused unnecessary placements in institutional settings. *See id.* at 31–33. These issues can all be answered on a class-wide basis and therefore, establish commonality.

C.      **Plaintiffs Satisfy the Typicality Requirement**

This case satisfies typicality because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when a named plaintiff's claims arise from the same pattern or practice and the same legal theory as those of the class. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). A named plaintiff need not have identical claims or facts to those of the class members, and typicality is generally satisfied where the named plaintiffs and class members have experienced the same unlawful conduct irrespective of unique fact patterns. *See id.*; *see also In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 408 (M.D. Fla. 2018).

The claims of the Named Plaintiffs and putative Class members all stem from the same factual polices, patterns, and practices that in turn give rise to the same legal claims. That is, they all have mental health disabilities and were subject to ADHR's assessments, planning practices, and placement array while in state custody. These facts raise the legal questions of whether the Named Plaintiffs and the putative Class members were unnecessarily institutionalized, or at risk of being unnecessarily institutionalized, to PRTF placements. Typicality exists even though the Named Plaintiffs and putative members of the class may have different disabilities or were impacted differently by ADHR's policies and practices. *See Dunn v. Dunn*, 318 F.R.D. 652, 666 (M.D. Ala. 2016), *modified sub nom. Braggs v. Dunn*, No. 2:14CV601-MHT, 2020 WL 2395987 (M.D. Ala. May 12, 2020). This Court and others have found that typicality exists even when named plaintiffs had not yet experienced the alleged classwide injury or had varying levels of risk of exposure to the alleged harm, because they were subject to the same policies or practices that created the risk of injury for the class. *See, e.g.*, *Braggs*, 317 F.R.D. at 664 (holding that, to establish typicality, named plaintiffs need only show that they had been *exposed* to the same policies and practices creating a substantial risk of serious harm shared by the class, not that they

had already suffered the same harm); *Newkirk v. Pierre*, No. 19-CV-4283 (NGG)(SMG), 2020 WL 5035930, at *10 (E.D.N.Y. Aug. 26, 2020) (finding typicality where named plaintiffs and putative class members "have experienced or are at imminent risk of experiencing discrimination . . . on the basis of their disabilities" due to "the same unlawful conduct" of "defendant's systemic failure to comply with the statutory mandates of the ADA and Section 504") (quotation marks omitted); *Steward v. Janek*, 315 F.R.D. 472, 489–90 (W.D. Tex. 2016) (finding typicality where plaintiffs and the class were experiencing or at risk of institutionalization).

### D.    Plaintiffs and Their Counsel Will Adequately Represent the Class

The class representatives and counsel satisfy Rule 23(a)(4) because they have and "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement asks (1) whether any fundamental conflicts of interest exist between the named plaintiffs and the class, and (2) whether the named plaintiffs will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). "'Adequate representation is usually presumed in the absence of contrary evidence,' and generally exists for injunctive-relief classes, because there is no monetary pie to be sliced up." *Braggs*, 317 F.R.D. at 666 (quoting *Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000)).

The Named Plaintiffs and their Next Friends are adequate representatives of the putative Class because there are no conflicts of interest with or amongst the class members. The Named Plaintiffs' interests in protecting their access to integrated, community-based placements, better assessment practices, and better ISP and discharge planning practices, directly align with the interests of the putative Class. Moreover, the relief Plaintiffs seek—declaratory and injunctive relief improving assessment practices, timely step-downs from PRTFs, case planning and

discharge planning, and access to community-based placements—would equally benefit all members of the class. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002) (noting that the requested relief would provide "substantially equal benefits and relief to all members of the class [of individuals with disabilities] through increased accessibility").

Further, Plaintiffs' counsel are deeply committed to representing the proposed class, have vigorously prosecuted this action, and have substantial experience in handling complex litigations, including federal class actions and suits on behalf of children in state custody asserting claims similar to those here. Plaintiffs' counsel are sufficiently qualified, experienced, and able to conduct the proposed litigation. *See Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985) (explaining that the qualifications and experience of plaintiffs' counsel are relevant to the ability of the class representatives to prosecute the action); *Dunn*, 318 F.R.D. at 680. As stated above and supported by affidavits in support of Plaintiffs' motion for class certification, Plaintiff counsel and their respective organizations have extensive experience litigating complex, federal class action lawsuits under Rule 23(b)(2). Frye Decl. ¶¶ 3-5, 7-9; Sherburne Decl. ¶¶ 4-6; Canada Decl. ¶¶ 3-8. The undersigned counsel will continue to prosecute this action vigorously and competently, representing the putative Class through final resolution. The competency of putative Class counsel is "reflected plainly in their extensive involvement in a large number of successful class actions vindicating the . . . federal statutory rights of classes of . . . individuals with disabilities in Alabama, throughout the South, and across the county." *Dunn*, 318 F.R.D. at 667.

E.    **Plaintiffs Satisfy Rule 23(b)(2)**

Plaintiffs satisfy the requirements of Rule 23(b)(2) because Defendant "has acted or refused to act on grounds that apply generally to the class," and as such, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This is a case for injunctive relief, and "some courts have gone so far as to say that [Rule 23(b)(2)'s] requirements are 'almost automatically satisfied in actions primarily seeking injunctive relief.'" *Braggs*, 317 F.R.D. at 667 (citation omitted). The Second Amended Complaint here avers that ADHR, through its policies and practices, has acted and refused to act on grounds generally applicable to each putative Class member. *See generally* SAC. Courts in this district have found that similar allegations satisfy Rule 23(b)(2). *Hunter v. Beshear*, No. 2:16-cv798-MHT, 2018 WL 564856, at *7 (M.D. Ala. Jan. 25, 2018).

## F.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Rule 23(g) requires that, when certifying a case as a class action, the Court must appoint class counsel. Fed. R. Civ. P. 23(g)(1). The Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court must also be convinced that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4); *see also Dunn*, 318 F.R.D. at 680 (appointing class counsel on behalf of an injunctive-relief settlement class where counsel had sufficient experience, "devoted an extraordinary amount of time and energy to" the case, and the Court did not identify any reason why counsel would not fairly and adequately represent the interests of the class). For the reasons cited in the attached declarations of Plaintiffs' counsel, the Parties respectfully request that the Court appoint

Plaintiffs' counsel as Class Counsel for purposes of approval and enforcement of the proposed Settlement Agreement. *See* Frye Decl.; Sherburne Decl.; Canada Decl.; *see also supra* Section IV(B)(i).

### VI. The Court Should Approve the Proposed Class Notice and Notice Plan and the Court Set a Schedule for Final Approval

Rule 23 provides that for a class "certified under Rule 23 . . .(b)(2), the court may direct appropriate notice to the class" "in a reasonable manner." Fed. R. Civ. P. 23(c)(2)(A), 23(e)(1)(B). Notice complies with these requirements when it informs the interested parties of the essential terms of the proposed settlement, explains how and where additional information on the detailed terms can be obtained, and affords class members reasonable opportunity to present objections to the terms of the settlement. *See Williams*, 237 F.R.D. at 691.

The Parties in this case have agreed to a Notice of Proposed Class Action Settlement, along with a detailed proposal for dissemination of the Proposed Notice, attached as Exhibit 2 ("Proposed Notice"), that comports with the requirements of Rule 23. The Proposed Notice summarizes the topics addressed by the proposed Settlement Agreement, provides a process for the publication of notice of the settlement and instructions on how to obtain full copies of the Settlement Agreement, and advises recipients what to do if they have questions. The Proposed Notice describes the procedures for persons who wish to be heard in favor of or in objection to the Settlement Agreement. It will also specify the date, time, place, and manner of attendance for the formal fairness hearing to be set by the Court. The form of Proposed Notice is clear and in plain language for putative Class members, their representatives, and other local advocates who may be interested in its terms. The Proposed Notice includes, among other things, posting the Notice in various location that putative Class members or their representatives are likely to frequent, and sending the Proposed Notice directly to placement providers, parents, other

caretakers, and guardians ad litem.[10] Accordingly, the Notice complies with Rule 23 and due process requirements, and it should be approved.

Further, the Parties respectfully move the Court to set the following schedule for notice to the proposed class and final approval of the Settlement Agreement as follows:

| Event | Date |
|---|---|
| Court's Order on Preliminary Approval | To be determined by the Court |
| Completion of Notice Plan | 6 weeks after the Court's order of Preliminary Approval |
| Deadline to Submit Objections and Statements in Support; Deadline to Provide Notice of Intent to Appear at the Final Approval Hearing | 6 weeks after Completion of Notice Plan |
| Motion for Final Approval and Deadline for Plaintiffs to Submit all Objections and Statements in Support; Parties' Responses to Objections and Statements in Support (if any) | 2 weeks after deadline to submit objections and statements in support |
| Final Approval Hearing | 2 weeks after Plaintiffs submit all objections and statements in support |

## VII.    Conclusion

For the foregoing reasons, the Parties jointly move the Court for an order granting preliminary approval of the Settlement Agreement (including the payment of attorneys' fees and costs); provisionally certifying the proposed class and appointing the undersigned Plaintiffs' counsel as Class Counsel; approving the form and manner of the Proposed Notice; and setting the deadlines and a hearing date proposed herein for the purpose of determining whether to grant final approval of the Settlement Agreement. The Parties are filing a proposed order contemporaneously herewith.

---

[10] It is also similar to other notices directed at foster care populations that have been approved. *See, e.g.*, Notice of Proposed Class Action Settlement, *M.B. v. Tidball*, No. 2:17-cv-04102-BP (W.D. Mo. July 8, 2019), ECF No. 280-2, and Order Granting Prelim. Approval (July 15, 2019), ECF No. 282.

Dated: December 18, 2025


Respectfully Submitted,

| | |
|---|---|
| FOR PLAINTIFFS: | FOR DEFENDANT: |

CHILDREN'S RIGHTS
*/s/ Lindsey S. Frye*
Lindsey S. Frye (admitted *pro hac vice*)
NC Bar No. 47752
Samantha M. Bartosz (admitted *pro hac vice*)
IL Bar No. 6194058
Katrina Braun (admitted *pro hac vice*)
NC Bar No. 53396
Valerie Achille (admitted *pro hac vice*)
NY Bar No. 5988548
Micaela Ann Heery-Hyatt (admitted *pro hac vice*)
NY Bar No. 5742218
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
(212) 683-4015 (fax)
lfrye@childrensrights.org
sbartosz@childrensrights.org
kbraun@childrensrights.org
vachille@childrensrights.org
mheeryhyatt@childrensrights.org


ALABAMA DISABILITIES ADVOCACY PROGRAM
Andrea J. Mixson
Ala. Bar No. ASB 2155-R79M
Larry Canada
Ala. Bar No. ASB 3153-N73L
2008 12th Street
Tuscaloosa, AL 35401
(205) 348-4928
amixson@adap.ua.edu
lcanada@adap.ua.edu


SOUTHERN POVERTY LAW CENTER
Michael Tafelski
Ala. Bar No. ASB 4400A33A
Claire Sherburne
Ala. Bar No. ASB 1121A61H

BAINBRIDGE, MIMS, ROGERS & SMITH, LLP

*/s/ Alfred F. Smith*
Alfred F. Smith, Jr.
ASB-8536-S70A
Elizabeth N. Terenzi
ASB-1139-G40M
BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
60 Luckie Drive, Ste. 415
Birmingham, AL 35223
(205) 879-1100
(205) 879-4300 (fax)
asmith@bainbridgemims.com

OF COUNSEL:
Felicia M. Brooks
Jonathan S. Schlenker
STATE OF ALABAMA
Department of Human Resources
Legal Office
P.O. Box 30400
Montgomery, AL 36130-4000
felicia.brooks@dhr.alabama.gov
jonathan.schlenker@dhr.alabama.gov

Sophia Mire Hill (admitted pro hac vice)
La. Bar No. 36912
Eugene Choi (admitted pro hac vice)
Ga. Bar No. 121626
400 Washington Ave.
Montgomery, AL 36104
(888) 414-7752
michael.tafelski@splcenter.org
claire.sherburne@splcenter.org
sophia.mire@splcenter.org
eugene.choi@splcenter.org

## CERTIFICATE OF SERVICE

I certify that on this day I served the foregoing document on the following persons via

electronic mail:

Felicia M. Brooks
Jonathan S. Schlenker
Office of the Attorney General
felicia.brooks@dhr.alabama.gov
jonathan.schlenker@dhr.alabama.gov

Alfred F. Smith, Jr.
Elizabeth N. Terenzi
Bainbridge, Mims, Rogers & Smith, LLP
asmith@bainbridgemims.com
bterenzi@bainbridgemims.com


Attorneys for Defendant


Dated: December 18, 2025

/s/ *Lindsey S. Frye*
Attorney for Plaintiffs

31