# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **C.C.,** et al., <br><br>           **Plaintiffs,** <br><br>           v. <br><br> **NANCY T. BUCKNER,** Commissioner of the Alabama Department of Human Resources, in her official capacity, <br><br>           **Defendant.** | **Civil Action No.:** 2:21-CV-367-ECM |

**DECLARATION OF LINDSEY FRYE IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF FORM AND MANNER OF CLASS NOTICE**

I, Lindsey Frye, hereby declare under penalty of perjury that the following facts are true and accurate to the best of my knowledge and belief.

1. I am a member of the bar of the State of North Carolina, and I have been authorized to appear *pro hac vice* in the Middle District of Alabama for purposes of this case. I am a Senior Staff Attorney at Children's Rights. I submit this Declaration in support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Form and Manner of Class Notice pursuant to Fed. R. Civ. P. 23(e).

1

2. Plaintiffs are represented in this case by attorneys from Children's Rights, the Alabama Disabilities Advocacy Program ("ADAP"), and the Southern Poverty Law Center ("SPLC").

## QUALIFICATIONS OF CHILDREN'S RIGHTS COUNSEL

3. Children's Rights is a non-profit, privately-funded organization founded in 1995. The organization advocates on behalf of youth harmed and at risk of harm in child welfare, juvenile justice, health care, immigration, and education systems in the United States. For more than two decades, Children's Rights has litigated complex federal class action lawsuits against state and local officials across the country to ensure government systems adequately serve the needs of children and adolescents in their care and that these children's legal rights are protected. By virtue of this extensive and specialized practice in the federal courts, Children's Rights attorneys have unique expertise in the areas of law that affect vulnerable and at-risk children and in litigating systemic reform cases such as this one.

4. Children's Rights has secured numerous federal court injunctions and settlements, which have resulted in the implementation of significant reforms benefitting hundreds of thousands of children. Children's Rights attorneys are presently monitoring the implementation of court-ordered relief and court-enforceable settlements in the states of Arizona, Georgia (Fulton and DeKalb Counties), Florida (Miami-Dade County), Iowa, Kansas, Maine, Michigan, Missouri, South Carolina, Tennessee, Texas, and Washington.

5. Together with other Children's Rights attorneys and staff, along with lawyers from ADAP and SPLC, I represent Plaintiffs in this case.

6. I graduated from UNC School of Law in 2014. Prior to joining Children's Rights, I served as a federal judicial clerk and spent approximately four years in litigation practice at Moore & Van Allen, PLLC, where I worked on large-scale regulatory investigations as well as Section 1983 civil rights litigation. Since joining Children's Rights in 2019, I have represented children in foster care in multiple federal class action lawsuits challenging systemic failures that harm children and/or place children at risk of harm in violation of their federal rights, including *Timothy B. v. Sangvai*, 1:22-CV-1046 (M.D.N.C.) (federal class action against state officials concerning their placement of children in foster care with mental health disabilities in institutional settings); *B.K. v. Faust*, 2:15-CV-00185 (D. Ariz.) (federal class action against state officials responsible for the Arizona child welfare and Medicaid systems concerning violations of children's rights); and *Kenny A., et al v. Governor of the State of Georgia, et al.*, 1:02-CV-01686 (N.D. Ga.) (federal class action against state officials responsible for child welfare system in Fulton and DeKalb Counties, Georgia).

7. I was joined on this case by Samantha Bartosz, Deputy Litigation Director at Children's Rights, who serves as Lead Counsel. Ms. Bartosz graduated from Loyola University School of Law in 1986. Prior to joining Children's Rights, she spent 17 years as a litigation attorney in private practice, serving as a partner at a law firm, and as General Counsel for the Office of Administration of the Executive Office of the President of the United States. Since joining Children's Rights, Ms. Bartosz has conducted extensive litigation on behalf of children involved in state systems, and has successfully obtained consent decrees or court injunctions on behalf of classes of children in federal actions, including *Dwayne B. v. Snyder*, 2:06-CV-13548 (E.D. Mich.) (federal class action against

state officials regarding treatment of children in foster care); *Cassie M. v. Raimondo*, 1:07-CV-00241 (D. R.I.) (federal class action against state officials regarding treatment of children in foster care); *M.B. v. Tidball*, 2:17-CV-4102 (W.D. Mo.) (federal class action against state officials regarding administration of psychotropic drugs to children in foster care); and *M.D. v. Abbott*, 2:11-CV-00084 (S.D. Tex.) (federal class action against state officials regarding treatment of children in foster care). She currently serves as Lead Counsel in *J.E.L. v. Charest*, 1:24-CV-471 (D. R.I.) (federal class action against state officials regarding Medicaid services for mental health treatment) and *B.F. v. López*, 1:23-CV-00109 (D. Md.) (federal class action against state officials regarding administration of psychotropic drugs to children in foster care).

8. The team from Children's Rights also includes senior staff attorney Katrina Braun and staff attorneys Valerie Achille and Micaela Heery-Hyatt, as well as other former staff at Children's Rights. Each attorney has significant experience litigating complex class action cases on behalf of children in the foster care system.

9. Counsel at Children's Rights are committed to representing the interests of the putative Plaintiff Class and will continue to devote the resources necessary to protect their rights.

**OVERVIEW OF INVESTIGATION AND LITIGATION EFFORTS**

10. For over a year prior to filing this lawsuit, Children's Rights, and our partners SPLC and ADAP, undertook a lengthy investigation of the potential claims at issue in this case. Lawyers from our organizations spoke with stakeholders around the state, including impacted children and families. We conducted legal and factual research and analysis and an extensive review of publicly available reports, data, and other information, including

information received through public records requests. As a result of this investigation, Plaintiffs filed this action on May 20, 2021.

11. The Parties engaged in substantial litigation and discovery efforts. Defendant filed a Motion to Dismiss in July 2021, which Plaintiffs opposed, and which this Court granted with leave to file an amended complaint. Plaintiffs filed their Amended Complaint in November 2021, and later filed a Second Amended Complaint in May 2023 adding additional Named Plaintiffs. The Parties negotiated a proposed discovery schedule, a protective order, and a further protocol regarding non-party records. The Parties also litigated several discovery disputes, including a contested motion to bifurcate discovery, a motion to quash, and a contested motion to extend deadlines. During the course of discovery, the Parties collectively exchanged nearly three million pages of documents, disclosed a total of ten expert witnesses, and conducted depositions of thirty-two witnesses, including experts, 30(b)(6) designees, and fact witnesses. Plaintiffs also disclosed twelve extensive expert reports from nine experts pursuant to Fed. R. Civ. P. 26, as well as an additional rebuttal report.

12. The Parties initially engaged in settlement negotiations in December 2022, at which time the Court granted a 60-day stay of litigation for this purpose. However, these negotiations were unsuccessful.

13. Plaintiffs filed a Motion for Class Certification in March 2024. The Motion was supported by a memorandum of law and several hundred pages of exhibits, including documents obtained during discovery, excerpts from depositions, and eight expert reports. Defendant opposed the motion and Plaintiffs filed a reply.

14. With the class certification motion pending, the Parties requested, and the Court granted, a stay for purposes of mediation. Between August 2024 and March 2025, the Parties participated in eight mediation sessions before Magistrate Judge Bryan.

15. In March 2025, the Court held a status conference and ordered the Parties to re-file class certification motions and set a new schedule for the case. Plaintiffs filed a Renewed Motion for Class Certification, Defendant opposed the motion, and Plaintiffs filed a reply.

16. During this time, the Parties continued to engage in settlement discussions, meeting in person for a total of six days in July and September 2025 and exchanging numerous drafts of proposed settlement language. These and previous discussions involved extensive arm's-length negotiations regarding settlement terms, structure, and the process for implementation of the agreement. Throughout this time, Plaintiffs' counsel conferred with the Next Friends to keep them up to date on negotiations and to obtain feedback on, and ultimately approval of, the proposed reforms. On September 29, 2025, the Parties filed a Joint Status Report indicating that they had reached agreement in principle resolving all claims in this litigation, and, on December 18, 2025, the Parties finalized the Settlement Agreement.

17. In total, Children's Rights dedicated thousands of hours to pre-filing investigation, post-filing litigation, and discovery work. Because of this work, Children's Rights attorneys have gained a thorough understanding of the facts at issue in this case, as well as the strengths and weaknesses of Plaintiffs' claims, the potential defenses, and the costs and risks of proceeding to trial.

## ADEQUACY OF THE SETTLEMENT AGREEMENT

18. Based on our knowledge of the case at hand, as well as our substantial experience in other federal court class action cases, Children's Rights counsel believe that this Settlement Agreement is of significant benefit to the putative Class and represents a fair, reasonable, and adequate solution of the Class Members' claims.

19. Further, we believe that the Settlement Agreement is in the best interests of all Class Members as it allows the Class Members to experience the substantial benefits of the Settlement as soon as possible and to avoid the risk of delayed relief and the uncertainty of litigation.

20. Children's Rights is dedicated to ensuring enforcement and implementation of the Settlement Agreement to ensure the rights of putative Class Members remain protected. Children's Rights will continue to commit the necessary resources to this case during the enforcement phase.

21. Plaintiffs' counsel has also shared and reviewed the language of the proposed Settlement Agreement with the Next Friends, each of whom supports the Settlement Agreement.

## NEGOTIATED FEES AND EXPENSES

22. Plaintiffs and ADHR reached an agreement in principle on the substantive portions of this case on September 19, 2025 although the Agreement was not finalized and executed until later. At the time we reached an agreement in principle, Plaintiffs' counsel had collectively dedicated over 15,000 hours of professional time to this matter, amounting to more than $3.7 million in billable time (which does not include over $700,000 in fees already excluded under billing judgment) and over $700,000 in litigation expenses. Through good faith, arm's-length negotiations, ADHR has agreed to reimburse Plaintiffs

7

$3 million of this amount for attorneys' fees and $400,000 for costs incurred by Plaintiffs, up to November 1, 2025.

23. To calculate their fees in this case, Plaintiffs' counsel multiplied the number of hours reasonably expended on this litigation by a reasonable hourly rate. Plaintiffs used comparable rates charged by private attorneys of similar experience working in the Alabama legal market. Plaintiffs' counsel's hourly rates ranged from $200 to $500/hr., depending on the attorneys' background and experience.

24. Plaintiffs' counsel were careful to allocate various responsibilities during the course of this litigation to avoid unnecessarily duplicating one another's efforts and to best utilize the strengths of each organization. Plaintiffs' counsel each played different roles on various tasks and activities during the course of the litigation, while collaborating on strategic decisions.

25. I am familiar with Children's Rights' practices governing the recording and maintenance of time and expense records. During the period covered by this fee agreement, it was the consistent policy and business practice of Children's Rights to require each attorney and paralegal to maintain contemporaneous and specific records of all time worked in a particular case, and for such records to be entered in a computerized billing system.

26. Throughout this litigation, Plaintiffs' counsel also made diligent efforts to hold costs and expenses, which must be paid when incurred, to a minimum. The costs and expenses to be reimbursed by ADHR were all actually expended to prosecute this action, and were reasonable and necessary to protect the interests of the Named Plaintiffs and putative Class.

[SIGNATURE PAGE TO FOLLOW]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 18, 2025                /s/ *Lindsey S. Frye*
                                        Lindsey Frye, Esq.
                                        Children's Rights
                                        Attorney for Plaintiffs